UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW J. LIS,<br><br>                         Plaintiff,<br><br>      -against-<br><br>JASON M. LANCASTER, DEBBIE LANCASTER, CECIL SIMMONS, DEE CHASE-UNNO, GULF PREMIER LOGISTICS, LLC, OVERLAND DISTRIBUTION CO., INC., OVERLAND EXPRESS CO., INC., JAL ENVIRONMENTAL SERVICES PROGRAMS D/B/A JAL ENVIRONMENTAL SERVICES PROGRAMS, INC., BANK OF AMERICA, JP MORGAN CHASE BANK,<br><br>                       Defendants. | Case No. 1:19-cv-01414 (JSR) |

MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO
REMAND AND FOR ATTORNEYS' FEES

WHITE AND WILLIAMS LLP
Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
7 Times Square, 29th Floor
New York, New York 10036
(212) 714-3070
butlert@whiteandwilliams.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................................... 3

    A. Background of the Parties .......................................................................................... 3

    B. Procedural Background .............................................................................................. 5

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................. 7

    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION
    BECAUSE THERE IS COMPLETE DIVERSITY BETWEEN THE PARTIES. ..................... 7

    I.    JAL's Citizenship Must be Disregarded For Purposes of Jurisdiction Because JAL is a
    Nominal Party Against Which No Cause of Action Has Been Alleged. ................................ 7

        A. Nominal Parties' Citizenships Are Disregarded In Determining Diversity Jurisdiction.
        .................................................................................................................................... 7

        B. JAL Is Clearly a Nominal Party Whose Citizenship is Irrelevant to Determining
        Diversity Jurisdiction. ............................................................................................... 9

    II.    Even Assuming that JAL Was A Real Party To The Controversy, It Is Undisputed That
    It Had No Operations In New York On The Date This Action Was Filed, And Thus, It
    Could Not Be A Citizen Of New York. ............................................................................... 12

        A. The Nerve Center Test ........................................................................................... 13

        B.    Plaintiff Ceased Working For JAL In December 2018, Thus, There Was No
        Corporate Activity In New York When This Action Was Filed. ..................................... 14

        C.    All JAL's Corporate Functions Took Place in Texas Where Its Only    Corporate
        Officer Resided Rendering Its Nerve Center In Texas. ................................................... 14

    THE REQUEST FOR ATTORNEYS' FEES AND COSTS MUST BE DENIED. ................ 17

CONCLUSION ........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Mut. Servs. Corp. v United States Liab. Ins. Co.*,
   293 F. Supp. 1082 (E.D.N.Y. 1968) ...................................................................9

*Arnold v Towers Perrin*,
   2003 U.S. Dist. LEXIS 6154 (S.D.N.Y. 2003)...................................................16

*Atl Mut. Ins. Co. v. Balfour MacLaine Intl*,
   85 F.3d 68 (2d Cir. 1996)....................................................................................12

*Bartlett v. Honeywell Intl., Inc.*,
   737 F. App'x 543 (2d Cir. 2018) ........................................................................13

*Breese v Tampax*,
   42 F. Supp. 115 (S.D.N.Y. 1941) .........................................................................8

*Calabro v. Aniqa Halal Live Poultry Corp.*,
   650 F.3d 163 (2d Cir. 2011)................................................................................17

*CBRE Inc. v Pace Gallery LLC*,
   2018 U.S. Dist. LEXIS 19452 (S.D.N.Y. 2018)................................................17

*Danbury v. Bowlarama Corp*,
   414 F. Supp. 354, 355 (S.D.N.Y. 1976)..........................................................15, 16

*Fair v. Verizon Communs., Inc.*,
   2014 U.S. Dist. LEXIS 77437 (S.D.N.Y. 2014)............................................13, 15

*Fed. Ins. Co. v. Tyco Intl. Ltd.*,
   422 F. Supp. 2d 357 (S.D.N.Y. 2006)...................................................................8

*Furchtgott-Roth v Wilson*,
   2010 U.S. Dist. LEXIS 92507 (S.D.N.Y. 2010)...................................................8

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010).......................................................................................13, 14, 15

*In re Blakeman*,
   512 F. Supp. 325 (E.D.N.Y. 1981) .....................................................................11

*Kanowitz v Broadridge Fin. Solutions, Inc.*,
   2014 U.S. Dist. LEXIS 46518 (E.D.N.Y. 2014).................................................17

*Kernaghan v. Franklin*,
   2008 U.S. Dist. LEXIS 75447 (S.D.N.Y. 2008).................................................11

*Kramer v. Miller*,
    1995 U.S. Dist. LEXIS 17532 (S.D.N.Y. 1995) ................................................................11

*Linardos v. Fortuna*,
    157 F.3d 945 (2d Cir. 1998) ................................................................................................7

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005) ..........................................................................................................17

*Matsumura v. Benihana Natl. Corp.*,
    2007 U.S. Dist. LEXIS 37376 (S.D.N.Y. 2007) ......................................................8, 9, 10

*Nachbaur v. Weiss*,
    2001 U.S. App. LEXIS 21470 (2d Cir. 2001) .....................................................................7

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458 (1980) ............................................................................................................8

*New York Shipping Ass'n v. Int'l Longshoremen Ass'n*,
    276 F. Supp. 51 (S.D.N.Y. 1967) .......................................................................................8

*OneWest Bank, N.A. v. Melina*,
    827 F.3d 214 (2d Cir. 2016) ..............................................................................................13

*Raphael v. 18 Rest.*,
    954 F. Supp. 549 (E.D.N.Y. 1996) ....................................................................................8

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*,
    521 F. Supp. 1046 (S.D.N.Y. 1981) ...................................................................................8

*SEG Vanguard Gen. Corp. v Jianxiong Ji*,
    195 F. Supp. 2d 564 (S.D.N.Y. 2002) ..............................................................................17

*St. Paul Fire & Mar. Ins. Co. v. Scopia Windmill Fund, LP*,
    87 F. Supp. 3d 603 (S.D.N.Y. 2015) ................................................................................14

*TCD Royalty Sub LLC v. Galderma Labs. L.P.*,
    2018 U.S. Dist. LEXIS 186838 (S.D.N.Y. 2018) .............................................................17

*United Specialty Ins. Co. v. Fisk Fine Art Servs., LLC*,
    2016 U.S. Dist. LEXIS 44285 (S.D.N.Y. 2016) .................................................................8

*Williams v. Int'l Gun-A-Rama*,
    416 F. App'x 97 (2d Cir. 2011) ........................................................................................18

*Zerafa v. Montefiore Hosp. Hous. Co.*,
    403 F. Supp. 2d 320 (S.D.N.Y. 2005) ................................................................................6

**STATUTES**

28 U.S.C. § 1332(c)(1)................................................................................................12

28 U.S.C. § 1332(a)(1)..................................................................................................7

28 U.S.C. § 1441(a)................................................................................................6, 12

28 U.S.C. § 1441(b)......................................................................................................7

28 U.S.C. § 1447(c)....................................................................................................17

28 U.S.C. § 1332......................................................................................................5, 12

New York State General Business Law § 349..............................................5, 9, 10, 11

Defendants Jason M. Lancaster ("Lancaster"), Debbie Lancaster ("Debbie"), Cecil Simmons ("Cecil"), Dee Chase-Unno ("Dee"), Gulf Premier Logistics, LLC ("Gulf Premier"), Overland Distribution Co., Inc. ("Overland Distribution"), Overland Express Co., Inc. ("Overland Express"), JAL Environmental Services Programs, Inc., improperly named herein as JAL Environmental Services Programs d/b/a JAL Environmental Services Programs, Inc. ("JAL") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law, dated March 25, 2019, Declaration of Jason Lancaster, dated March 25, 2019 ("Lancaster Decl."), Declaration of Thomas E. Butler, dated March 25, 2019 ("Butler Decl.") and annexed exhibits in opposition to Plaintiff Andrew Lis' ("Plaintiff" or "Lis") Motion to Remand and for Attorneys' Fees and Costs (collectively, the "Motion"). For the reasons stated herein, the Motion must be denied in its entirety.

## **PRELIMINARY STATEMENT**

Plaintiff submits that this Court lacks subject matter jurisdiction solely on the ground that complete diversity is lacking because Plaintiff is a citizen of the State of New York and Defendant JAL is allegedly also a New York citizen. The argument fails for two independent reasons. First, JAL is at best a nominal defendant whose citizenship is not relevant to determine if diversity exists, and, at worst, JAL is a fictitious defendant included in the suit in an attempt to defeat diversity. Second, under any test, JAL is and has always been a citizen of Texas with its principal place of business and the nerve center of its business located in Texas.

The Complaint makes no factual allegations against JAL. The Complaint alleges no claims against JAL. And the Complaint seeks no relief against JAL. Rather, it would seem that Plaintiff is seeking somehow to assert claims derivatively on behalf of JAL, thus necessitating

adding JAL as a nominal defendant.[1]  It is black letter law that the citizenship of nominal defendants is not factored into determining whether or not complete diversity exists.  Thus, whether JAL is a Texas or New York citizen is irrelevant to this Court's analysis.  It would appear that Plaintiff has conceded this point as he failed to address it in his moving papers despite Defendants removing this action on this very ground.  As such, there is complete diversity between the parties and the case was properly removed to this Court.

Even assuming this Court found that JAL is not a nominal party, complete diversity exists here because JAL is a Texas citizen.  Plaintiff's argument that JAL is a New York citizen because its "nerve center" is in New York is based on stretching the relevant facts, ignoring the reality of how JAL operated and disregarding the fact that no work on behalf of JAL was being conducted in New York as of the date of removal.  JAL's "nerve center" and where its corporate operations occurred has always been in Texas.  JAL is a corporation formed in Texas with its principal place of business in Texas.  JAL is 100% owned by Lancaster, also a Texas citizen.  JAL's corporate policies, strategies and day-to-day operations all took place in Texas.  JAL filed its tax returns with its Texas address using a Texas accountant.  JAL's bank accounts are in Texas.  Moreover, JAL is not registered with the New York Secretary of State as a foreign business doing business in New York.  JAL does not lease any office space in New York.  JAL's only connection to New York is that Plaintiff, who was employed by Defendant Gulf Premier, was asked to assist JAL in its business development and took steps to do so from New York.  And most importantly, no work was being performed in New York as of the date of removal.  JAL is a Texas citizen, and thus, there is complete diversity among the parties.  Plaintiff's Motion must be denied in its entirety.

---

[1] It is important to note here that Plaintiff is not an owner, principal or shareholder of JAL and lacks standing to even assert the claims brought here.

## STATEMENT OF RELEVANT FACTS

### A. Background of the Parties

This action is civil in nature and arises from a business dispute between Plaintiff and Lancaster involving the management and operations of JAL, a privately held corporation wholly owned by Lancaster. *See* Butler Decl. ¶ 4, Ex.1; Lancaster Decl. ¶ 2.

JAL is in the business of recycling byproducts of industrial waste. Lancaster Decl. ¶ 4. "In particular, JAL acts as an intermediary by purchasing recycled materials from producers in the United States and reselling the products to vendors nationally and overseas." *Id.* ¶ 4. Gulf Premier and Overland Express assisted JAL in its operations by providing logistical support. *Id.* ¶ 4.

JAL was established on or about February 17, 2016 and is incorporated in the State of Texas. *Id.* ¶ 5. At the time this action was commenced, JAL had one office located at 51 Liberty Branch Boulevard, Spring, Texas 77389 (the "Texas office"), which is where the company is headquartered and where its mailing address with the Texas Comptroller of Public Accounts is listed. *Id.* ¶ 6.

At all relevant times, Lancaster was the President and sole shareholder of JAL. *Id.* ¶ 2. In this role as President, Lancaster "directed JAL's corporate activities, operations and policies." *Id.* ¶ 9. Specifically, Lancaster "was responsible for managing the company's general and over-all activities; handling the executive operations; overseeing the accounting, auditing and primary cash management functions; directing the corporate decisions, including legal functions; administrating contracts and transactions; supervising business development, including communications with current and prospective clients; tracking corporate accounts and sales; and implementing and developing JAL's corporate policies." *Id.* ¶ 9. Lancaster performed his duties

as President for JAL through the Texas office, which is also where he stored and maintained all the corporate documents and paperwork.  *Id.* ¶ 10.

In contrast, Plaintiff was never a shareholder, officer, director or an employee of JAL.  *Id.* ¶ 23.  Rather, at all relevant times, Plaintiff was an employee of Gulf Premier.  *Id.* ¶ 17.  Plaintiff was hired on or about February 1, 2016 to join Gulf Premier as a Business Development Director.  *Id.* ¶ 17.  In that role, Plaintiff assisted Lancaster "in leadings the sales for JAL, developing the client base of JAL and invoicing the accounts he developed."  *Id.* ¶ 17.  In exchange for his services, Plaintiff was paid a base salary of approximately $150,000 per annum.  *Id.* ¶ 17; Lis Affidavit ¶ 17.  In addition to this base employment salary, Plaintiff also received health benefits for himself and his family members as well as substantial bonuses.  Lancaster Decl. ¶ 17.

During his employment with Gulf Premier, Plaintiff worked from his home in New York at 61 West 10th Street, New York, New York 10011 and 101 West 23rd Street, New York, New York 10011.  *Id.* ¶ 18.  In or around March of 2018, Plaintiff entered into a residential lease for an apartment located at 95 Orchard Street, #2, New York, New York 10002 (the "Orchard Address").  *Id.* ¶ 19.  Plaintiff was the sole tenant on the lease and used the space to conduct his duties on behalf of Gulf Premier and his other businesses.  *Id.* ¶ 19.

Sometime after its formation, JAL decided to establish a sales arms in New York and China.  *Id.* ¶ 14.  In furtherance of this strategy, JAL agreed to pay certain sums toward the cost of Plaintiff's rental.  *Id.* ¶ 21.  However, at no point did JAL conduct any corporate operations or policy making from the Orchard Address.  *Id.* ¶ 22.

Plaintiff alleges that, in or about late 2018, the working relationship between Plaintiff and Lancaster began to deteriorate.  Lis Aff. ¶ 27.  In fact, as of December 31, 2018, Plaintiff ceased

all employment with Gulf Premier and ceased acting on behalf of JAL.  Lancaster Decl. ¶ 17.  As

a result of the deterioration, Plaintiff seeks to recover damages for purported breaches of

contract, breaches of the implied duty of good faith and fair dealing; promissory estoppel; unjust

enrichment; fraud; breach of fiduciary duty; declaratory judgment; accounting; constructive trust;

conversion and violation of New York State General Business Law ("G.B.L.") § 349 based on

wrongdoings allegedly committed by Lancaster (with assistance from the other Defendants)

against JAL.  Butler Decl. ¶ 4, Ex. 1.

### B.  Procedural Background

On or about February 8, 2019, Plaintiff filed a Verified Complaint (the "Complaint") in

the Supreme Court of the State of New York, County of New York, Index No. 650855/2019,

captioned *Andrew J. Lis v. Jason M. Lancaster, Debbie Lancaster, Cecil Simmons, Dee Chase-*

*Unno, Gulf Premier Logistics, LLC, Overland Distribution Co., Inc., Overland Express Co., Inc.,*

*JAL Environmental Services Programs d/b/a JAL Environmental Services Programs, Inc.* (the

"State Court Action").  Butler Decl. ¶ 4, Ex. 1.  At the same time, Plaintiff also filed an

Emergency Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order,

requesting, among other things, that Defendants be enjoined from transferring assets of JAL, be

required to place certain monies purportedly taken from JAL into escrow and be estopped from

damaging Plaintiff's reputation in the market place.  Butler Decl. ¶ 5, Ex. 2.  The hearing on

Plaintiff's Emergency Order to Show Cause was scheduled for February 14, 2019.  Butler Decl.

¶ 6, Ex. 3.

On February 14, 2019, Defendants filed a Notice of Removal, pursuant to 28 U.S.C. §

1332, on the grounds that the amount in controversy exceeds $75,000 and there is complete

diversity between Plaintiff and the Defendants.  Butler Decl. ¶ 7, Ex. 4.  Removal was timely

filed within thirty days after the date that the Complaint was received, and a copy of the Notice

of Removal was filed and served with Supreme Court of New York and on counsel for Plaintiff. *Id.* ¶ 8, Ex. 5.

In or around late February, 2019, nearly three weeks after removal, counsel for Plaintiff contacted the undersigned to advise that he intended to request remand and to renew the application for a preliminary injunction and temporary restraining order in this Court. Butler Decl. ¶ 9.

The parties held a telephone conference with the Park Clerk, Mr. Samuel Steinbock-Pratt, on March 4, 2019, during which the undersigned opposed the applications on both substantive and procedural grounds. Butler Decl. ¶ 10. After hearing argument, the Court granted Plaintiff's application to submit a motion to remand and motion for preliminary injunction and temporary restraining order, and set forth a briefing schedule. *Id.* ¶ 10, Ex. 6.

On March 14, 2019, Plaintiff moved to remand the case to the Supreme Court of New York State County of New York, alleging only that JAL is a citizen of New York, same as Plaintiff, because its principal place of business is in New York. *See* Plaintiff's Memorandum of Law accompanying the Motion, dated March 15, 2019 ("Pl. Mem."). Plaintiff further argues that he is entitled to attorneys' fees and costs incurred in making the Motion, submitting that there was no objectively reasonable basis for the removal. *Id.* As set forth below, the Motion must be denied in its entirety.

## STANDARD OF REVIEW

The removal statute, 28 U.S.C. 1441(a), allows removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) (citing 28 U.S.C. 1441(a)). Courts have original jurisdiction over all cases where the sum of controversy exceeds the value of $75,000 and there is complete diversity of citizenship between the parties.

28 U.S.C. 1332(a)(1).  To remove an action based on diversity jurisdiction, the burden is on the

removing party to demonstrate that there was complete diversity of citizenship between all

plaintiff and all defendants at the time the action was commenced.  *See Nachbaur v. Weiss*, 2001

U.S. App. LEXIS 21470, *3 (2d Cir. 2001) ("A case falls within the federal district court's

original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e.

only if there is no plaintiff and no defendant who are citizens of the same State."); *Linardos v.

Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (stating that diversity is "determined by examining

the citizenship of the parties at the time the action is commenced").

Applying this standard, the Motion must be denied.

## ARGUMENT

### THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION BECAUSE THERE IS COMPLETE DIVERSITY BETWEEN THE PARTIES.

The sole issue before this Court is whether JAL's citizenship defeats complete diversity.

As set forth in detail below, it simply does not.  JAL is a nominal party against whom no

allegations of wrongdoing, much less any cause of action, have been or can be alleged and, thus,

JAL's citizenship must be disregarded in determining diversity.  Even assuming that JAL was a

real, non-nominal party, complete diversity exists because JAL's place of incorporation and

principal place of business was, at all times, in Texas.

I.  **JAL's Citizenship Must be Disregarded For Purposes of Jurisdiction Because JAL is a Nominal Party Against Which No Cause of Action Has Been Alleged.**

*A.  Nominal Parties' Citizenships Are Disregarded In Determining Diversity Jurisdiction.*

It is well established that, in determining whether complete diversity exists for purposes

of 28 U.S.C. 1441(b), "citizens upon whose diversity a plaintiff grounds jurisdiction must be real

and substantial parties to the controversy" and "a federal court must disregard nominal or formal

parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (quotations omitted).  As such, "[t]here is no question that the presence of a merely nominal party, or one against whom no claim is stated, will not defeat removal." *Breese v Tampax*, 42 F. Supp. 115, 115 (S.D.N.Y. 1941) (citation omitted).  In addition, "the presence of nominal parties with no real, or direct interest in the controversy" will be disregarded for purposes of determining diversity.  *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981) (citations omitted).

A party to an action is "nominal" or "formal" and its citizenship must be disregarded if demonstrated, by clear and convincing evidence, that "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendants in state court." *Furchtgott-Roth v Wilson*, 2010 U.S. Dist. LEXIS 92507, at *8 (S.D.N.Y. 2010).  *See Fed. Ins. Co. v. Tyco Intl. Ltd.*, 422 F. Supp. 2d 357, 389 (S.D.N.Y. 2006) (noting that the "question of whether a party is nominal appears to be governed by essentially the same legal standard as whether a party is fraudulently joined").  "[T]he inquiry focuses on whether the plaintiff truly intended to obtain a judgment against that defendant" – "[a] defendant is clearly nominal if the plaintiff fails to state a cause of action against the [] defendant and the failure is obvious according to the settled rules of the state." *Raphael v. 18 Rest.*, 954 F. Supp. 549, 551 (E.D.N.Y. 1996) (citing *New York Shipping Ass'n v. Int'l Longshoremen Ass'n*, 276 F. Supp. 51, 53 (S.D.N.Y. 1967)).

Courts have routinely disregarded the citizenship of parties against which no cause of action has been alleged.  *See e.g., United Specialty Ins. Co. v. Fisk Fine Art Servs., LLC*, 2016 U.S. Dist. LEXIS 44285, at *7-9 (S.D.N.Y. 2016); *Matsumura v. Benihana Natl. Corp.*, 2007 U.S. Dist. LEXIS 37376, at *8-14 (S.D.N.Y. 2007); *Saxe, Bacon & Bolan, P.C. v Martindale-*

*Hubbell, Inc.*, 521 F. Supp. 1046, 1049 (S.D.N.Y. 1981) (denying remand after determining that the "individual has no cause of action separate from the corporation"); *Am. Mut. Servs. Corp. v United States Liab. Ins. Co.*, 293 F. Supp. 1082, 1084 (E.D.N.Y. 1968) (denying motion to remand upon finding that "no cause of action has been asserted against WILD.").

**B.  JAL Is Clearly a Nominal Party Whose Citizenship is Irrelevant to Determining Diversity Jurisdiction.**

A review of the Complaint shows that JAL is, at best, a nominal party against whom there are no pending claims and against whom there is no possibility that a claim could be asserted.  The Complaint contains eleven causes of action for breaches of contract, breaches of the implied duty of good faith and fair dealing; promissory estoppel; unjust enrichment; fraud; breaches of fiduciary duty; declaratory judgment; accounting; constructive trust; conversion and violations of G.B.L § 349.  Butler Decl. ¶ 1, Ex. 1.  However, there are no set of facts referenced in the Complaint, or any proffered by Plaintiff in his Motion, by which JAL could be held liable to Plaintiff under any of these theories.

In *Matsumura v. Benihana Natl. Corp.*, a shareholder plaintiff attempted to bring a cause of action against a corporation for breach of fiduciary duty, but "the thrust of plaintiff's complaint" was that the company's "profits and assets were allegedly being plundered to its detriment."  2007 U.S. Dist. LEXIS 37376, at *11 (S.D.N.Y. 2007).  In evaluating whether the corporation was a nominal party for purposes of diversity, the Court determined that plaintiff's allegations were "contradicted by the underlying theory of the claim."  *Id.*  Because plaintiff asserted that the other shareholder was acting in his own interests, rather than the interests of the corporation, the Court determined that it would be "illogical" for plaintiffs to also be allowed to allege that the company "as a corporate entity was the party who breached its fiduciary duty."

*Id*. Accordingly, the Court found that there was no possibility of a claim against the corporation and the corporation, therefore, was a nominal party. *Id*. The same is true here.

Here, none of the claims for breach of contract, breach of implied duty of good faith and fair dealing or promissory estoppel could possibly be read to be directed against JAL. Nowhere in the Complaint is there any allegation that JAL was ever a party to any contract with Plaintiff or that JAL ever made any promise or misrepresentation that Plaintiff relied on to his detriment. In fact, even applying a liberal reading of the Complaint, each of these causes of action is directed only against the other Defendants. *See* Butler Decl. ¶ 4, Ex. 1, ¶¶ 232-249. Specifically, the Complaint alleges: (1) "Defendant Jason Lancaster and Plaintiff entered into a partnership agreement" (*id.* ¶ 234); Lancaster "failed to abide by the agreement, and in fact violated and breached the agreement on numerous occasions" (*id.* ¶¶ 250-273); (2) "Defendant Jason Lancaster, Overland and Gulf Premier and the remaining individual defendants . . . made clear and unambiguous promises to Plaintiff" (*id.* ¶ 251); and (3) "Defendant Jason Lancaster made representations to Plaintiff regarding the ownership interests" (*id.* ¶ 264). There is no possibility that a claim could be asserted against JAL for breach of contract, breach of implied duty of good faith and fair dealing or promissory estoppel.

Likewise, any purported claim for relief by Plaintiff against JAL for the remaining claims of unjust enrichment; fraud; breaches of fiduciary duty; declaratory judgment; accounting; constructive trust; conversion and violations of G.B.L. § 349 would be flatly contradicted by the underlying theory of the Complaint.

The thrust of the Complaint is that certain profits and assets of JAL were plundered by Lancaster and the other Defendants to the detriment of Plaintiff and JAL. *See* Butler Decl. ¶ 4, Ex. 1, ¶ 15, 16. In essence, Plaintiff has alleged (without naming them as such) derivative claims

on behalf of JAL, which traditionally requires the corporation to be named as a nominal defendant. *Kramer v. Miller*, 1995 U.S. Dist. LEXIS 17532, at *11 (S.D.N.Y. 1995) ("The Court recognizes that in derivative actions in this Circuit the corporation is routinely named as a nominal defendant.").  In similar circumstances where a plaintiff attempts to initiate a shareholder derivative suit, claiming injury to the corporation as a result of another officer's abuse of control, mismanagement, waste of corporate assets, unjust enrichment and the like, courts have disregarded the citizenship of the corporation itself for the purposes of determining diversity, finding the corporations to be only nominal parties to the controversy. *See Kernaghan v. Franklin*, 2008 U.S. Dist. LEXIS 75447, at *1, n. 1 (S.D.N.Y. 2008).  Even "in an accounting action in which some directors or officers of the corporation allege wrongdoing by other directors or officers," courts likewise treat the corporation as a nominal party. *In re Blakeman*, 512 F. Supp. 325, 329 (E.D.N.Y. 1981).

Plaintiff – a non-shareholder – lacks standing to assert a derivative claim to redress any injury allegedly suffered by JAL.  Nevertheless, it is clear from a plain reading of the Complaint that the facts alleged to support claims for unjust enrichment; fraud; breaches of fiduciary duty; declaratory judgment; accounting; constructive trust; conversion and violations of G.B.L. § 349 allege wrongdoing committed *against* JAL, not by JAL.  In particular, the Complaint alleges that Lancaster, together with Overland Express, Overland Distribution and the other individual Defendants, "perpetrated [a fraud] against him and JAL" (Butler Decl. ¶ 4, Ex. 1, ¶ 15); took "over $1,000,000 from JAL without Mr. Lis' knowledge or permission" (*id.* ¶ 16); "raided the company account of funds" (*id.* ¶ 19); threatened to "reveal pricing and other sensitive information" to undermine the operations of Mr. Lis and the company" (*id.* ¶ 20); took "advantage of the company doing well and paid himself handsomely" (*id.* ¶ 29); and generally

"raided the corporate account" (*id.* ¶ 63).  There is no allegation that JAL breached any fiduciary owed to Plaintiff.  *See id.*  ¶¶ 274-280 ("Jason Lancaster assuming the position of partner in JAL" and "[s]aid Defendant owed certain fiduciary duties to Plaintiff"; "Overland, Premier Logistics and remaining individual defendants, too, owed fiduciary duties to Plaintiff").  There are likewise no facts referenced in the Complaint, or submitted in support of the Motion, to suggest that JAL itself committed any wrongdoing or bad acts that caused damage to Plaintiff. *See generally, id.*

In light of the above, this Court need not even consider the citizenship of JAL in determining diversity, because JAL is clearly a nominal party.  Thus, the Court has subject matter jurisdiction over the case, pursuant to 28 U.S.C. § 1441(a), and the Motion must be denied in its entirety.

**II.    Even Assuming that JAL Was A Real Party To The Controversy, It Is Undisputed That It Had No Operations In New York On The Date This Action Was Filed, And Thus, It Could Not Be A Citizen Of New York.**

In determining diversity jurisdiction, it is well settled that a corporation is a citizen both of the state of its incorporation and of the state where it has its principal place of business at the time the action was filed or as of February 11, 2019.  28 U.S.C.A. § 1332(c)(1); *Atl Mut. Ins. Co. v. Balfour MacLaine Intl*, 85 F.3d 68, 71 (2d Cir. 1996) ("A corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C.S. § 1332.").

Plaintiff contends that JAL is a dual citizen of New York, where Plaintiff asserts it has its principal place of business, and Texas, where it is incorporated.  Pl. Mem., p. 5.  In support of his argument that JAL's principal place of business is in New York, Plaintiff conclusorily states that executive control of JAL was exercised in New York (Pl. Mem., p. 10) even though it is undisputed that no executive or officer of JAL was ever present in New York.   Lancaster Decl. ¶

22.  Moreover, it is undisputed that Plaintiff, the only person who allegedly acted on behalf of JAL in New York, is not an executive or officer of the corporation.  Nor is there any evidence showing that Plaintiff did anything more for the corporation other than conduct some of its business development and sales activities, *i.e.* meeting customers, invoicing, collecting payments, in New York.  Lancaster Decl. ¶ 22.  Finally, and most importantly, Plaintiff ceased working from Gulf Premier and acting on behalf of JAL as of December 31, 2018.  Lancaster Decl. ¶ 17.

Plaintiff's contention is nothing more than a pipe dream because it is black letter law, which Plaintiff wholly ignored, that simply having operations in a state or employees in a state without any evidence of any corporate officers directing and acting on behalf of the corporation in that state does not create a principal place of business.

### A.    *The Nerve Center Test*

To determine a corporation's principal place of business, courts have stated that it "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center' and not simply an office where the corporation holds its board meetings."[2]  *Hertz Corp. v. Friend* 559 U.S. 77, 78 (2010), cited by *Bartlett v. Honeywell Intl., Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) and *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016).  The "nerve center" of an enterprise is a "single location" and "the place where a corporation's officers direct, control and coordinate the corporation's activities."  *Fair v. Verizon Communs.,*

---

[2] While Plaintiff spends a fair amount of time in the Motion discussing the "locus of operations" test, it is clear that this Circuit follows the Supreme Court decision in *Hertz* and applies the "nerve center" test.  Plaintiff's reliance on cases decided prior to *Hertz* is misguided and likely designed to confuse this Court as to the clear factors used by courts to determine the nerve center of a corporation.  It should be wholly ignored.

*Inc.*, 2014 U.S. Dist. LEXIS 77437, at \*10 (S.D.N.Y. 2014) (citing to *Hertz Corp.*, 559 U.S. at 92-93).  "The test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed."  *St. Paul Fire & Mar. Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015).

>    **B.     Plaintiff Ceased Working For JAL In December 2018, Thus, There Was No Corporate Activity In New York When This Action Was Filed.**

Here, Plaintiff has asserted that JAL has its nerve center in New York solely based on his own activities that took place in New York.  Lis Aff. ¶ 6.  As of December 31, 2018, Lis was no longer employed by Gulf Premier and had ceased working on behalf of JAL.  Lancaster Decl. ¶ 17.  As such, there could not have been any high-level activities or any operations taking place in New York in February 2019.  Without any activity in New York on February 8, 2019 – the day this action was filed – it is impossible for JAL to be a citizen of New York.  At the time the action was filed, JAL was clearly a Texas corporation.

>    **C.     All JAL's Corporate Functions Took Place in Texas Where Its Only Corporate Officer Resided Rendering Its Nerve Center In Texas.**

Even if this Court found that Plaintiff's 2017 and 2018 activities on behalf of JAL were relevant to its jurisdictional analysis, these claims still fall short of creating a nerve center and, thus, citizenship in New York.

In arguing that JAL's principal place of business is New York, Plaintiff relies on the following: (1) his own affidavit simply discussing his activities in furtherance of sales and client relations for the corporation, including contacts with new hires; (2) JAL reimbursing Plaintiff for rent on space he rented in New York[3]; (3) business cards and a draft website that Plaintiff

---

[3] Of note, while these facts do not amount to establishing JAL's nerve center in New York, the Sharing Agreement repeatedly relied on by Plaintiff in his Motion was never signed by Lancaster and Lancaster never sent any letter to the landlord for 95 Orchard Street – both documents are forgeries.  Lancaster Decl. ¶ 20.

requested listing New York as one of JAL's location; and (4) Lancaster's acknowledgement that the New York address may need to be added to Overland's general liability insurance policy.  Of note, Plaintiff's affidavit fails to discuss any corporate policy or high level decision making occurring in New York.  None of these facts on their own or collectively create a nerve center that confers citizenship on JAL in New York.  And not surprisingly, Plaintiff does not rely on a single analogous case to support his analysis that the sales activities and day-to-day operations delineated in his affidavit amount to JAL's "nerve center."

The Supreme Court has stated that "the nerve center is not the most significant place where a defendant's general business activities take place" and "if the bulk of the company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the principal place of business is New York." *Hertz Corp.*, 559 U.S. at 96.  In *Fair,* the Court, applying the *Hertz* nerve center test, held that defendant's principal place of business was New York, where the "offices of the chief executive officers" were located, rather than New Jersey where the "key operations driving the underlying technology" took place.  2014 U.S. Dist. LEXIS 77437, at *10-11.

Similarly, in *Danbury v. Bowlarama Corp.*, the court analyzed whether "corporation has its principal place of business at its president's [] New York office, as indicated by all the corporate documents, or at the bowling center in [] Connecticut, where its vice president has a desk and . . . the corporation's only other employee spend a third of their week."  414 F. Supp. 354, 355 (S.D.N.Y. 1976).  In that case, the court held that, under the "nerve center" test, the corporation's principal place of business was not where the employees were located, but in New York where the chief officer of the corporation was based and where he directed the activities of the employees.  *Id.* at 355-356.  The court also found that the New York office was the "focal

point of the corporation's business affairs" based on evidence that New York was: the address listed on corporate tax returns; where all corporate records were kept and where the accountants did their business; where the president controlled the finances; where the president signed majority of the corporate checks; where the bank statements were directed to the corporation; and where bookkeeping was done. *Id*. at 356. These factors are similarly present here.

When we analyze the following significant and pertinent facts that Plaintiff knew and chose to ignore, it is clear that the nerve center of JAL is in Texas: (1) Plaintiff is not an executive or officer of JAL (Lancaster Decl. ¶ 23); (2) Plaintiff was employed and paid a hefty salary with benefits by Gulf Premier that ended on December 31, 2018 (*id*. ¶ 17); (3) JAL's sole owner and officer, Lancaster, was always based in Texas from where he directed and coordinated JAL's activities and policies (*id*. ¶ 10); (4) JAL's corporate tax returns were handled and filed in Texas (*id*. ¶ 11); (5) JAL's bank accounts were maintained in Texas (*id*. ¶ 12); (6) invoices from customers were sent to JAL at its Texas address (*id*. ¶ 13); (7) JAL only had sales arms in New York and China (*id*. ¶ 14); (8) JAL never entered into any commercial leases in New York (*id*. ¶ 20); and (9) JAL never registered to do business in New York (*id*. ¶ 15).

Thus, when we take all of the above facts and even assume as Plaintiff asserts that all of JAL's day-to-day sales activity and client interfacing took place in New York, the nerve center is in Texas.[4] This is particularly true where, as here, it is undisputed that no officer, director or principal of the corporation conducted business on behalf of JAL in New York. Lancaster Decl. ¶ 8, 9. Nor does the fact that New York may have been listed on JAL's **draft** website or used on Plaintiff's business cards, emails or other stationary, along with Texas and Hong Kong, weigh in favor of finding New York is JAL's principal place of business. *See Arnold v Towers Perrin*,

---

[4] Plaintiff relies solely on his claim that day-to-day sales activity and client interfacing took place in New York in support of his argument that JAL is a New York citizen.

2003 U.S. Dist. LEXIS 6154, at *6 (S.D.N.Y. 2003) (finding that a corporation's designation of a headquarters on its website was not determinative under the nerve center test).

Finally, "courts in the Second Circuit regularly find a corporate officer's sworn statement to be sufficient proof of a corporation's principle place of business." *Kanowitz v Broadridge Fin. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 46518, at *27 (E.D.N.Y. 2014); *CBRE Inc. v Pace Gallery LLC*, 2018 U.S. Dist. LEXIS 19452, at *5 (S.D.N.Y. 2018) (finding that defendant had "met its burden of demonstrating that its principal place of business is in Los Angeles, California through the Declaration of [] Plaintiff's Vice President, Corporate Legal"). As sole owner and President, Lancaster's unequivocal declaration that JAL's headquarters and its corporate functions are located in Texas is more than sufficient evidence to defeat the Motion. *See* Lancaster Decl. ¶ 8, 9.

The Motion must be denied as JAL is and always has been only a citizen of Texas.[5]

## THE REQUEST FOR ATTORNEYS' FEES AND COSTS MUST BE DENIED.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). And, "when an objectively reasonable basis exists, fees should be denied." *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011). Furthermore, a "court should deny a request for attorneys' fees unless a defendant's grounds for removal are clearly barred by established federal law." *TCD Royalty*

---

[5] In addition, the mere fact that JAL may have been run from Lancaster's home address in Texas does not alter this Court's analysis here. *See e.g., SEG Vanguard Gen. Corp. v Jianxiong Ji*, 195 F. Supp. 2d 564, 569 (S.D.N.Y. 2002) (finding that, under the nerve test, a corporation's headquarters was at the officer's home address).

*Sub LLC v. Galderma Labs. L.P.*, 2018 U.S. Dist. LEXIS 186838, at \*9-11 (S.D.N.Y. 2018)

(citing *Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011)).

Here, even if the Court were to determine that remand is appropriate, Defendants clearly acted in good-faith, without delay and on justifiable grounds when they removed the action based on diversity jurisdiction, for the reasons set forth above.  In light of Defendants' objectively reasonable and defensible basis for removal, this Court should deny Plaintiff's request for attorneys' fees and costs in its entirety.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Remand and for Attorneys' Fees and Costs must be denied in its entirety.

Dated: New York, New York
        March 25, 2019

By: _____

Thomas E. Butler
Nicole A. Sullivan
Shruti Panchavati
White and Williams LLP
7 Times Square, Suite 2900
New York, New York 10036
(212) 714-3070
Butlert@whiteandwilliams.com
*Attorneys for Defendants*