**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANDREW LIS,

                    Plaintiff,

          -against-

JASON M. LANCASTER, DEBBIE LANCASTER,
CECIL SIMMONS, DEE CHASE-UNNO, GULF
PREMIER LOGISTICS, LLC, OVERLAND
DISTRIBUTION CO., INC., OVERLAND
EXPRESS CO., INC., JAL ENVIRONMENTAL
SERVICES PROGRAMS D/B/A JAL
ENVIRONMENTAL SERVICES PROGRAMS,
INC., BANK OF AMERICA, JP MORGAN
CHASE BANK,

                    Defendants.

Docket No. 1:19-cv-01414 (JSR)

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

WHITE AND WILLIAMS LLP
Thomas E. Butler, Esq.
Nicole A. Sullivan, Esq.
Shruti Panchavati, Esq.
7 Times Square, 29th Floor
New York, New York 10036
(212) 714-3070
butlert@whiteandwilliams.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT ...................................................................................................... 8

PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF FOR THE BENEFIT OF JAL ................................................................................................ 8

PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION. ............................. 9

I.   There is No Showing of Irreparable Harm to Plaintiff. ................................ 11

II.  Plaintiff Fails to Show Any Likelihood of Success on the Merits. ................ 13

A.   There is No Sufficiently Serious Question on the Merits. ........................ 14

B.   The Balance of Equities Favors Denying Injunctive Relief. ................... 16

III. The Public Interest Weighs in Favor of Denial. ......................................... 17

IV.  The Mandatory Injunctive Relief Sought Must Likewise Be Denied ........... 18

V.   An Injunction Against Disparagement is Not Permissible. ......................... 19

VI.  Plaintiff is Not Entitled to an Asset Freezing Injunction – An Extreme Remedy ........ 20

VII. Plaintiff is Not Entitled to Restrain / Retrieve the Retainer Funds. ............ 21

VIII. Court Should Not Enter Injunction in the Absence of Showing that Personal Jurisdiction Exists. ................................................................................... 23

TO THE EXTENT THIS COURT IS INCLINED TO GRANT INJUNCTIVE RELIEF, A BOND MUST BE REQUIRED. ........................................................................... 23

THIS COURT SHOULD ISSUE SANCTIONS AGAINST PLAINTIFF UNDER RULE 11 OF THE FRCP. ............................................................................................... 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Advanced Video Tech., LLC v. HTC Corp.*,
 103 F. Supp. 3d 409 (S.D.N.Y. 2015)..........................................................................9

*Alexander v. Galeno*,
 2009 U.S. Dist. LEXIS 105428 (S.D.N.Y. Nov. 5, 2009) ..........................................9

*Almontaser v. N.Y. City Dep't of Educ.*,
 519 F. 3d 505 (2d Cir. 2008)......................................................................................19

*Barturen v. Wild Edibles, Inc.*,
 2007 U.S. Dist. LEXIS 93025 (S.D.N.Y. Dec. 18, 2007) ........................................18

*Belmonte v. N.Y. Letter Carriers*,
 1980 U.S. Dist. LEXIS 14538 (S.D.N.Y. 1980) .......................................................11

*Boelter v. Hearst Communs., Inc.*,
 2016 U.S. Dist. LEXIS 12322 (S.D.N.Y. 2016) ....................................................8, 9

*Cacchillo v. Insmed, Inc.*,
 638 F.3d 401 (2d Cir. 2011)......................................................................................8, 9

*Camprubi-Soms v. Aranda*,
 2001 U.S. Dist. LEXIS 11291 (S.D.N.Y. 2001) .......................................................19

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
 598 F.3d 30 (2d Cir. 2010)....................................................................................14, 15

*CRP/Extell Parcel I, L.P. v. Cuomo*,
 394 Fed. Appx. 779 (2d Cir. 2010) ...........................................................................12

*Diversified Mtge. Invs. v. U. S. Life Tit. Ins. Co.*,
 544 F.2d 571 (2d Cir. 1976).......................................................................................11

*Do the Hustle, LLC v. Rogovich*,
 2003 U.S. Dist. LEXIS 10445 (S.D.N.Y. 2003) .......................................................23

*Doctor's Assoc. v. Stuart*,
 85 F.3d 975 (2d Cir. 1996).........................................................................................24

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
 559 F.3d 110 Cir. 2009 ..............................................................................................11

*Freedom Holdings, Inc. v. Spitzer*,
 408 F.3d 112 (2d Cir. 2005)........................................................................................12

*Freydel v. New York Hosp.*,
  2000 U.S. App. LEXIS 31862 (2d Cir. 2000) .........................................................9

*Gala Enters. v. Hewlett Packard Co.*,
  989 F. Supp. 525 (S.D.N.Y. 1998) .......................................................................22

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007)...................................................................................12

*Grillasca v. N.Y. City Hous. Auth.*,
  2010 U.S. Dist. LEXIS 35417 (S.D.N.Y. 2010) ...................................................16

*Grupo Mexicano de Sarrollo S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999)........................................................................................20, 21

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
  917 F.2d 75 (2d Cir. 1990)...................................................................................12

*Lenz ex rel Naples Tennis Resort v. Associated Inns & Rests. Co.*,
  833 F. Supp. 362 (S.D.N.Y. 1993) .........................................................................9

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990)...............................................................................................8

*Marcy Playground, Inc. v. Capitol Records*,
  6 F. Supp. 2d 277 (S.D.N.Y. 1998) .........................................................14, 16, 17

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997).............................................................................................10

*Metro. Opera Assn. v. Local 100, Hotel Emples. & Rest. Emples. Intl. Union*,
  239 F.3d 172 (2d Cir. 2001).................................................................................19

*Morley v. Ciba-Geigy Corp.*,
  66 F.3d 21 (2d Cir. 1995).....................................................................................24

*MyWebGrocer LLC v. Hometown Info, Inc.*,
  375 F.3d 190 (2d Cir. 2004).................................................................................17

*Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*,
  118 F.R.D. 45 (S.D.N.Y. 1987) ...........................................................................25

*New York v. Actavis PLC*,
  787 F.3d 638 .........................................................................................................19

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004).................................................................................19

*Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*,
  582 F. Supp. 2d 616 (S.D.N.Y. 2008) ....................................................................18

*OSRecovery, Inc. v. One Groupe Intl.*,
  305 F. Supp. 2d 340 (S.D.N.Y. 2004) ....................................................................21

*Pashaian v. Eccleston Props.*,
  1995 U.S. Dist. LEXIS 4532 (S.D.N.Y. 1995) ......................................................12

*Person v. United States*,
  2019 U.S. Dist. LEXIS 9296 (S.D.N.Y. 2019) ........................................................8

*Pharm. Socy. v. N.Y. State Dept. of Social Servs.*,
  50 F.3d 1168 (2d Cir. 1995)....................................................................................24

*Rodriguez v. DeBuono*,
  175 F.3d 227 (2d Cir. 1999)..............................................................................11, 13

*S.E.C. v. Princeton Economic International, Ltd.*,
  84 F. Supp. 2d 443 (S.D.N.Y. 2000) ......................................................................22

*Shamrock Power Sales, LLC v. Scherer*,
  2016 U.S. Dist. LEXIS 144773 (S.D.N.Y. 2016) ..................................................21

*State of New York v. Nuclear Reg. Comm'n*,
  550 F.2d 745 (2d Cir. 1977)....................................................................................11

*Std. Metals Corp. v. Tomlin*,
  503 F. Supp. 586 (S.D.N.Y. 1980) .........................................................................13

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)......................................................................................10

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995)........................................................................................10

*Triebwasser & Katz v. Am. Tel. & Tel. Co.*,
  535 F.2d 1356 (2d Cir. 1976)............................................................................11, 20

*VoiceStream Wireless Corp. v. All U.S. Communs.*,
  149 F. Supp. 2d 29 (S.D.N.Y. 2001) ......................................................................13

*Warner-Lambert Co. v. Northside Dev. Corp.*,
  86 F.3d 3 (2d Cir. 1996)..........................................................................................10

*Weitzman v. Stein*,
  897 F.2d 653 (2d Cir. 1990)....................................................................................23

*Winter v. NRDC*,
  555 U.S. 7 (2008) ..................................................................................................10

*WTA Tour, Inc. v. Super Slam, Ltd.*,
  339 F. Supp. 3d 390 (S.D.N.Y. 2018) ..................................................................10

*Yunus v. Lewis-Robinson*,
  2019 U.S. Dist. 5654 (S.D.N.Y. 2019) ..................................................................10

*Zell/Merrill Lynch Real Estate Opportunity Partners LP III v. Rockefeller Ctr.
  Props.*,
  1996 U.S. Dist. LEXIS 3345 (S.D.N.Y. 1996) ......................................................10

*ZeptoLab UK Ltd. v Commonwealth Toy & Novelty Co.*,
  2012 U.S. Dist. LEXIS 122995 (S.D.N.Y. 2012) ..................................................20

## OTHER AUTHORITIES

Fed. R. Civ. P. 11 ..............................................................................................4, 24, 25

Fed. R. Civ. P. 65 ....................................................................................................23

Defendants Jason M. Lancaster ("Lancaster"), Debbie Lancaster ("Debbie"), Cecil Simmons ("Cecil"), Dee Chase-Unno ("Dee"), Gulf Premier Logistics, LLC ("Gulf Premier"), Overland Distribution Co., Inc. ("Overland Distribution"), Overland Express Co., Inc. ("Overland Express"), and JAL Environmental Services Programs, Inc., improperly named herein as JAL Environmental Services Programs d/b/a JAL Environmental Services Programs, Inc. ("JAL") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law, dated March 25, 2019, Declaration of Jason Lancaster ("Lancaster Decl."), Declaration of Thomas E. Butler, dated March 25, 2019 ("Butler Decl.") and annexed exhibits in opposition to Plaintiff Andrew Lis' ("Plaintiff" or "Lis") Motion of Plaintiff for a Preliminary Injunction (the "Motion").

## PRELIMINARY STATEMENT

This is an action brought by Plaintiff seeking damages and certain other relief, purportedly on behalf of himself and Defendant JAL, arising out of the business relationship between Lis and Lancaster. Plaintiff has now submitted his Motion for omnibus injunctive relief. Based on flimsy and entirely contested allegations of wrongdoing, and his unsupported contention that he is likely to succeed on certain claims, Plaintiff asks the Court to do the following, before any other proceedings occur here:

- Freeze the bank accounts belonging to JAL;

- Prevent Defendants from legally binding JAL in any business transaction;

- Prevent Defendants from acting on behalf of JAL;

- Prevent Defendants from selling any merchandise belonging to JAL;

- Prevent Defendants from paying themselves any amounts from JAL;

- Prohibit Defendants from destroying any records relating to the company;

- Prohibit Defendants from holding themselves out as Plaintiff or disparaging Plaintiff;

- Compel Defendants to return certain amounts paid to them to JAL accounts;

- Compel Defendants to permit Plaintiff access to the books, records, accounts and communications of JAL;

- Compel Lancaster to return $28,000, $98,000, and $72,000 purportedly owed to Plaintiff or paid by Plaintiff on the company's account;

- Compel Defendants to pay a commission to a sales agent; and

- Prevent Defendants from compensating their attorneys in this matter and directing that the attorneys provide substantial information regarding the retainer paid to them by the Defendants.

Simply put, Plaintiff requests that the Court, at this very preliminary stage of the litigation, declare Plaintiff the certain victor in the litigation, and provide not only all of the relief that Plaintiff could conceivably be entitled to at the end of the case, but to provide relief he has not even sought. This is an unprecedented demand and one that is absurd on its face. Plaintiff is not entitled to injunctive relief of any kind here.

First, Plaintiff does not even have standing to seek injunctive relief. Plaintiff was not a "principal," "partner," or "shareholder" of JAL. While Lancaster and Lis discussed the possibility of Lis becoming a shareholder or partner in a common venture, that never happened. Instead, throughout the relevant period, Lis was an employee of Defendant Gulf Premier. In that capacity, Lis was paid for services purportedly rendered to JAL as an employee, and has no standing to assert any claims based on any injury purportedly inflicted on JAL by the other Defendants, or to seek injunctive relief on JAL's behalf. But, that is exactly what Plaintiff seeks to do.

At the same time, what Plaintiff is plainly seeking in his Complaint are monetary damages. He claims that he was entitled to certain amounts generated by JAL, which he did not receive. It is well established that complaints seeking monetary relief only do not support a claim for injunctive relief. Indeed, many of the specific forms of injunctive relief sought by Plaintiff are not even permissible. It is well established that courts do not have the power to freeze bank accounts to secure claims for monetary relief. Likewise, there is no basis for a court to issue broad injunctions preventing Defendants from communicating with vendors, customers and others. Courts have repeatedly rejected requests for such injunctions, and the extraordinarily rare circumstance where they have been found appropriate are not present here.

Beyond these serious threshold flaws, Plaintiff has not met the standard for obtaining any sort of injunctive relief. In fact, Plaintiff has not even cited the appropriate standard. Much of the relief Plaintiff seeks is not intended to maintain the status quo, but, rather, is *mandatory* injunctive relief, seeking to compel certain actions be taken to by Defendants to advance Plaintiff's case. Such relief requires Plaintiff to meet a more rigorous standard than the "normal" standard for injunction. A mandatory injunction requires a demonstration of a "clear or substantial" likelihood of success on the merits as well as a "strong showing of irreparable harm," in addition to showing the granting preliminary injunction is in the public interest. Plaintiff has come nowhere near meeting this standard or the standard for any injunction. Plaintiff has merely made a number of unsupported and self-serving allegations about improper conduct, many of which make little sense, and all of which are all denied. This does not establish a likelihood of success on the merits, and because the remedy for his claims is an award of damages, he has not established irreparable harm. Plaintiff may feel he has gripes with Defendants, but that certainly does not entitle him to injunctive relief.

The reason for seeking injunctive relief despite no basis in fact or law, however, is apparent, although unspoken by Plaintiff. Unbeknownst to Defendants until quite recently, last April Plaintiff registered a separate company called JAL Environmental Services Programs, LLC, and has begun to use that entity to conduct business belonging to JAL. No doubt Plaintiff would like very much for the Court to prevent the Defendants from running their business and communicating with the market while they are tied up in litigation with Plaintiff for years while Plaintiff is free to use his new entity to usurp the same business. This Court certainly should not indulge Plaintiff.

In short, Plaintiff proffer does not even come close to what is needed to obtain the draconian relief sought. On the contrary, Plaintiff's motion is clearly frivolous under Rule 11 and sanctions should be awarded.

## STATEMENT OF FACTS

For a complete statement of the relevant facts, the Court is respectfully referred to the Declaration of Jason M. Lancaster. The relevant facts are summarized below.

In early January 2016, Lis and Lancaster discussed entering into a venture in the industrial waste business which would utilize each one's respective expertise. Lancaster Decl. ¶ 3. The planned business would act as an intermediary by purchasing recycled materials from producers in the United States and reselling the products to vendors nationally and oversees. *Id.* Lis had experience in sales and marketing of these services, while Lancaster had expertise in freight forwarding which would be a necessary component of the venture. *Id.* In pursuit of the same, Lancaster formed a corporation under Texas law to act as a vehicle for pursuing the business. *Id.* ¶ 5. Lancaster agreed he would handle all the administrative duties and provide the international freight forwarding services as well as domestic transportation services. *Id.* In addition, Lancaster agreed to take responsibility for securing a business loan for JAL which would provide the startup

funds necessary to get the firm off the ground. *Id.* ¶ 6. Lis would be responsible for acquiring customers and invoicing various projects. *Id.* ¶ 5.

After JAL was formed, Lancaster arranged for JAL to receive a business loan of $300,000.00 from Debbie Lancaster. *Id.* ¶ 6, Ex. A. The purpose of the loan was for startup costs associated with the business. *Id.* ¶ 6. The loan was evidenced by a Note, which plainly indicated that the borrower was a corporation organized under the laws of the State of Texas. *Id.* ¶ 6, Ex. A.

At this time, Lis was employed by Amlon Resources Group ("Amlon"), a global environmental services company focused on recycling, processing and treatment of industrial waste. *Id.* ¶ 8. That employment ended on February 1, 2016 at which time Lis became an employee of Gulf Premier. *Id.* Gulf Premier was a freight forwarding company that Lancaster had founded and of which he was the sole owner. *Id.* ¶ 5. Lis and Lancaster agreed that Lis would be compensated for his services through a salary of $150,000.00 per year as well as health insurance and other benefits. *Id.* ¶ 8. In early May, Amlon delivered to Gulf Premier a letter stating that Lis had a non-compete agreement with Amlon and demanding that any activities in violation of that agreement cease and desist. *Id.* ¶ 10, Ex. C. This is the first time Lancaster became aware of this prohibition. *Id.* ¶ 10. When he confronted Lis, Lis told him that he had discussed this with a lawyer friend who told him it was not a consideration. *Id.* ¶ 11. However, as a result, Lancaster and Lis determined that Lis would not become a partner in any venture, and that would be the case for the following two years. *Id.*

As the venture moved forward, Lis continued to focus on sales and invoicing. *Id.* ¶ 12. Lancaster handled the business side of the company including the finances, with which Lis had no part or familiarity. *Id.* ¶ 13. However, Lis informed Lancaster that he maintained a separate ledger

reflecting revenue realized from transactions that he booked. *Id.* Notably, his ledger did not refer to or include any company expenses, which necessarily impacted the company's finances. *Id.*

In addition to the $150,000.00 a year salary that Ms. Lis began receiving in 2016, he was paid certain bonuses. *Id.* ¶ 14. Lis' total compensation for 2017 was $277,000.00. *Id.* ¶ 8, 14, Ex. B. By contrast, Lancaster did not take any salary until late 2017. *Id.* ¶ 14. In 2017, Lancaster contracted with an outside Texas accountant who handled JAL's books. *Id.* ¶ 15. JAL's 2017 and 2018 tax returns were prepared by this company. *Id.* With respect to 2017 taxes, JAL owed approximately $28,000.00 that was owed was paid by Lancaster with a personal check. *Id.* ¶ 17, Ex. E. As a result, Lancaster reimbursed himself from company funds. *Id.* ¶ E. In 2018, Plaintiff received total compensation of approximately $225,000 from Gulf Premier. *Id.,* Ex. B.

In late 2018, the relationship between Lis and Lancaster became increasingly strained. *Id.* ¶ 25. At around this time, Lis sent to Lancaster a copy of a proposed addendum to a proposed Management and Operating Agreement of JAL which Lis had prepared with a lawyer friend, Darius A. Marzec. *Id.* ¶ 24, Ex. G. The Agreement, which Lancaster had not reviewed or authorized set forth a number of provisions regarding the relationship between the parties going forward, including that they would each have a 50-50 share of JAL. *Id.* It also permitted either party to liquidate the company at his request. *Id.* The Agreement specifically stated that no formal written agreement had existed between the parties. *Id.* Lancaster, uncomfortable that he had not been invited to participate in preparation of an agreement of this nature, and equally uncomfortable with some of its terms, did not sign it. *Id.* ¶ 24.

In late October 2018, the relationship had grown contentious. *Id.* ¶ 25. Lis made a number of accusations against Lancaster, referring to him as a criminal and otherwise accusing him of wrongdoing. *Id.* As a result, Lancaster decided to eliminate Lis' access to the company's books.

*Id.* He left in place access to e-mail to enable Lis to complete his sales activities while transitioning out of the company. *Id.* In an effort to prevent the end of the relationship, the parties agreed to a meeting in Houston, Texas on October 29, 2018. *Id.* ¶ 26. Lis arrived at that meeting with a list of what he claimed were overdue invoices. *Id.* ¶ 27. He also brought a "release" which he presented to Lancaster. *Id.* ¶ 27, Ex. H. The release purported to set in motion the wind down of the company and indicated that during the wind down Lis would run the company's operations. *Id.* The release also indicated that, once the company was wound down, both parties were free to pursue whatever business they wished to pursue, except for JAL. *Id.* Also at that meeting, Lis indicated his desire that the $300,000.00 loan that has been made to JAL by Debbie Lancaster be paid off and it subsequently was paid in full. *Id.* ¶ 28, Ex. I.

After the meeting, Lis reacted angrily when his release was not signed and his plans to take charge of the business were thwarted. *Id.* ¶ 25. During that time period he made a number of defamatory statements and threats. *Id.* In addition, it would appear that Lis spoke to certain vendors and in an effort to undermine JAL's business. *Id.* Lis' employment was terminated as of December 31, 2018. *Id.* ¶ 29. He received a COBRA notice so that he could continue the health coverage he had received as an employee. *Id.* ¶ 29, Ex. J.

After the termination of the employment relationship, the company discovered that Lis had formed a separate New York LLC with the same name as JAL in April of 2018. *Id.* ¶ 31, Ex. K. The company also discovered that Lis was using that company's EIN number on invoices sent to certain of JAL's customers in early 2019. *Id.* ¶ 32, Ex. L, M. Therefore, not only was Lis attempting to take control of amounts rightfully intended for JAL, but Lis had clearly ceased doing anything on behalf of JAL by that point in time. *Id.*

On February 8, 2019, Lis filed a Complaint in New York State Supreme Court against Lancaster and the other defendants.  That action was removed to Federal Court on February 14, 2019.

## ARGUMENT

### PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF FOR THE BENEFIT OF JAL.

It is well established that "[a] plaintiff must 'demonstrate standing for each claim and form of relief sought,' including preliminary injunctive relief." *Boelter v. Hearst Communs., Inc.*, 2016 U.S. Dist. LEXIS 12322, at *3 (S.D.N.Y. 2016) (citing *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).  "The specificity required to establish standing to seek a preliminary injunction 'will normally be no less than that required on a motion for summary judgment.'" *Person v. United States*, 2019 U.S. Dist. LEXIS 9296, at *3, n. 2 (S.D.N.Y. 2019) (citing *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 907, n.8 (1990)).  "This is so because a plaintiff's burden to demonstrate a likelihood of success on the merits 'necessarily includes a likelihood of the court's reaching the merits, which in turn depends on a likelihood that plaintiff has standing.'" *Person*, 2019 U.S. Dist. LEXIS 9296, at *3, n. 2.

"In order to meet the constitutional requirement of standing, a federal plaintiff seeking relief bears the burden of establishing three elements: 'First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Alexander v. Galeno*, 2009 U.S. Dist. LEXIS 105428, at *9 (S.D.N.Y. Nov. 5, 2009) (quoting *Freydel v. New York Hosp.*, 2000 U.S. App. LEXIS 31862, at *17-18 (2d Cir. 2000)).  Establishing

the first element requires Plaintiff to do more than simply allege that he has suffered harm as a result of Defendants conduct.  Plaintiff must support each claim by submitting "affidavit[s] or other evidence specific facts."  *Boelter v. Hearst Communs., Inc.*, 2016 U.S. Dist. LEXIS 12322, at \*11 (S.D.N.Y. 2016) (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).

Here, the Motion must be denied in the first instance because Plaintiff's request for an injunction fails to establish an "injury in fact" to Plaintiff given that substantially all the injury he has alleged and endeavors to prevent by the injunction is injury to JAL, which only JAL has standing to assert.  JAL is "an entity distinct from its shareholders" (*Advanced Video Tech., LLC v. HTC Corp.*, 103 F. Supp. 3d 409, 419 (S.D.N.Y. 2015) (quotations omitted)) and neither a shareholder nor an officer can maintain a direct claim for injury to the corporation (*see Lenz ex rel Naples Tennis Resort v. Associated Inns & Rests. Co.*, 833 F. Supp. 362, 380 (S.D.N.Y. 1993)). "[F]or a plaintiff to bring an individual action, he must be injured directly or independently of the corporation."  *Lenz ex rel Naples Tennis Resort v Associated Inns & Rests. Co.*, 833 F Supp. 362, 380 (S.D.N.Y. 1993).  Plaintiff has failed to reference, much less allege, any injury to himself independent of JAL.  *See generally* Lis. Aff., ¶ 6, Ex. A.  Moreover, Lis was never a shareholder of JAL (Lancaster Decl., ¶ 1, 2), and thus, could not possibly have standing to assert claims of wrongdoing committed by the Defendants against JAL.

### PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION.[1]

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. NRDC*, 555 U.S. 7, 24 (2008).  "The Second Circuit has recognized that a preliminary injunction

---

[1] The Motion contains intermittent references to a temporary restraining order.  *See* Plaintiff's Memorandum of Law in Support of the Motion ("Pl. Mem."), p. 3, 9-10.  However, these appear to be merely hold overs from Plaintiff's prior application for relief in State Court.  To the extent that Plaintiff attempts to seek a temporary restraining order in his Motion, such request should likewise be denied.

is 'one of the most drastic tools in the arsenal of judicial remedies . . . [and] must be used with great care." *Zell/Merrill Lynch Real Estate Opportunity Partners LP III v. Rockefeller Ctr. Props.*, 1996 U.S. Dist. LEXIS 3345, at *14 (S.D.N.Y. 1996); *see also Yunus v. Lewis-Robinson*, 2019 U.S. Dist. 5654, *8 (S.D.N.Y. 2019) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

A party seeking to obtain a preliminary injunction must demonstrate: "(1) irreparable harm in the absence of the injunction; (2) either a likelihood of success on the merits, or both serious questions going to the merits and a balance of hardships in the movant's favor; and (3) that a preliminary injunction is in the public interest." *WTA Tour, Inc. v. Super Slam, Ltd.*, 339 F. Supp. 3d 390, 403 (S.D.N.Y. 2018); *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). The party seeking an ordinary prohibitory injunction must demonstrate "by a clear showing" that the necessary elements are satisfied. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). When, as here, a plaintiff also seeks a mandatory injunction – one that alters the status quo by commanding some positive act – a heightened standard for injunction applies, requiring that plaintiff to "show a 'clear' or 'substantial' likelihood of success." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)).

Moreover, contrary to what the Motion may suggest, "the purpose of preliminary injunctive relief [] is 'not to award the movant [] ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." *Belmonte v. N.Y. Letter Carriers*, 1980 U.S. Dist. LEXIS 14538, at *3 (S.D.N.Y. 1980) (citing *State of New York v. Nuclear Reg. Comm'n*, 550 F.2d 745, 754 (2d Cir. 1977)). Where the injunction "would in effect give the plaintiffs substantially the

ultimate relief they seek . . . before there has been any trial of the issues and where the district

court has not found that there has been a showing of probable success on the merits" courts have

denied the request for injunction because this would give the plaintiff "an advantage not presently

accorded to its competition." *Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d

Cir. 1976); *see New York v. Nuclear Regulatory Com.*, 550 F.2d 745, 754 (2d Cir. 1977) ("The

circumstances under which the 'drastic remedy' of a preliminary injunction should be awarded

become more apparent if we recall that the purpose of such relief is not to award the movant the

ultimate relief sought in the suit . . . ."); *Diversified Mtge. Invs. v. U. S. Life Tit. Ins. Co.*, 544 F.2d

571, 576 (2d Cir. 1976) (stating that the purpose of preliminary injunction is not to "grant relief

properly awarded only in a final judgment" or to decide questions "properly determinable after

trial").

Applying the above, the Motion must be denied.

**I.     There is No Showing of Irreparable Harm to Plaintiff.**

It is well settled that "[a] showing of irreparable harm is 'the single most important

prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v.

Wabtec Corp.,* 559 F.3d 110, 118 2d Cir. 2009 (quoting *Rodriguez v. DeBuono*, 175 F.3d 227,

234 (2d Cir. 1999). Importantly, "[t]o satisfy the irreparable harm requirement, Plaintiffs must

demonstrate that absent a preliminary injunction they will suffer an 'injury that is neither remote

nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until

the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d

60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir.

2005)). And, "an injury compensable by money damages is insufficient to establish irreparable

harm for purposes of injunctive relief." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. Appx.

779, 781 (2d Cir. 2010); *see also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

Plaintiff argues that he will be irreparably harmed because, without injunctive relief, "Defendants will destroy completely the business of [JAL]." Lis Aff., ¶ 3. However, Plaintiff is not an owner of JAL and is no longer employed by Gulf Premier to act on behalf of JAL. Lancaster Decl., ¶ 29, 32, Ex. L. Therefore, it is inconceivable – even taking as true the allegations that Defendants will attempt to sell, transfer or waste JAL's assets – that Plaintiff could in any way be harmed. This is especially true where, even before the parties separated on December 31, 2018, Plaintiff was secretly competing with JAL by engaging in the same business with at least one of JAL's client under his secret and new company of the same name. Lancaster Decl., ¶¶ 31-33.

Moreover, Plaintiff has not and cannot establish *irreparable* harm because the injuries complained of can be remedied by monetary damages. Plaintiff has premised his entire request for injunctive relief on his claim for fraud. While there is no basis for that claim, even if there were, any alleged fraud can be remedied by an award of damages. Courts have recognized only rare exceptions to this general rule, primarily: (a) "where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency" (*CRP/Extell Parcel I, L.P.*, 394 F. App'x at 781); or (b) "evidence demonstrates an intent by the defendant to frustrate any judgement on the merits obtained by the plaintiff." (*Pashaian v. Eccleston Props.*, 1995 U.S. Dist. LEXIS 4532, at *14 (S.D.N.Y. 1995)). Plaintiff makes no showing that either is applicable here, nor can he.

Plaintiff's entire argument seems to be premised on sweeping, conclusory, and self-serving assertions about damages that Defendants supposedly have inflicted upon JAL (which again Plaintiff had no ownership interest in) and wild suggestions of a future conspiracy to harm

Plaintiff's reputation and goodwill.  *See generally*, Pl. Mem.  However, "[a] preliminary injunction will not issue based upon remote or speculative fears."  *VoiceStream Wireless Corp. v. All U.S. Communs.*, 149 F. Supp. 2d 29, 37 (S.D.N.Y. 2001) (citation omitted).  "A mere speculation that there is a possibility that the party seeking the injunction may in some unproved way suffer loss or damage is insufficient proof of a lack of remedy at law."  *Std. Metals Corp. v. Tomlin*, 503 F. Supp. 586, 596 (S.D.N.Y. 1980).

Plaintiff's allegations that he fears Defendants will harm his reputation and goodwill by derogating him, impersonating him or acting on behalf of JAL (Pl. Mem., pp. 5-9) are pure speculation and guesswork, asserted merely in an effort to contrive some plausible basis for this Court to grant injunctive relief when none exists.  The same is true for Plaintiff's allegation that he, a non-owner of JAL, will be irreparably harmed if JAL is unable to pay its bills or Defendants continue to withdraw from JAL's accounts.  Pl. Mem., pp. 14-16.

Thus, Plaintiff fails to articulate any irreparable harm sufficient to warrant injunctive relief and, given his failure to do so, the Court does not need to consider the remaining factors.  *See Rodriguez by Rodriguez v. DeBuono*, 175 F. 3d 227, 234 (2d Cir. 1998) ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.").

## II.    Plaintiff Fails to Show Any Likelihood of Success on the Merits.

Assuming this Court finds irreparable harm has been shown, Plaintiff must next show "either (1) likelihood of success on the merits or (2) sufficiently serious question going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  No such showing has been or can be made here.

In support of his claim that he has met the standard for demonstrating likelihood of success on the merits, Plaintiff merely recites the elements of fraud and then perfunctorily contends that, because he has set forth a *prima facie* case, he has also established his likelihood of success. Pl. Mem., p. 11. However, contrary to the suggestion, likelihood of success is not established merely by a showing that one has made a *prima facie* case. Moreover, "[w]hile the existence of factual disputes does not require the conclusion that a movant lacks a strong likelihood of success on the merits, it certainly is relevant." *Marcy Playground, Inc. v. Capitol Records*, 6 F. Supp. 2d 277, 283, n. 21 (S.D.N.Y. 1998). Where "[v]irtually all of the pivotal facts are sharply contested, and the outcome is likely to turn on the trier's assessment of the credibility of a number of witnesses," a finding of likelihood of success on the merits is inconceivable. *Id*. It is clear based on the evidence submitted that the operative facts at issue in this case are heavily disputed – although many of Plaintiff's contentions cannot withstand scrutiny. Thus, there can be no finding of likelihood of success on the merits.

Presumably recognizing that he has failed to satisfy this standard, Plaintiff next argues that "a preliminary injunction is still appropriate if there are sufficiently serious questions on the merits and the balance of hardships tip[] decidedly in plaintiff's favor." Pl. Mem., pp. 11-12. Plaintiff once again fails to show either.

### A.     There is No Sufficiently Serious Question on the Merits.

Plaintiff simply asserts that "Plaintiff's claim that Defendants' engaged in a massive fraud are sufficiently serious to justify a preliminary injunction" and then cites to his claim that Lancaster defrauded JAL by taking funds from JAL for Gulf Premier and himself with the assistance of the other Defendants in an effort to demonstrate that there are sufficiently serious questions on the merits. Pl. Mem., pp. 12-13. Plaintiff once again fails to make any such showing.

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citations omitted). "Because the moving party must not only show that there are "serious questions" going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.* Plaintiff categorically fails to meet this burden.

The claims relied on by Plaintiff to show a serious question as to the merits are, in fact, alleged actions taken by Defendants supposedly to the detriment of JAL, a corporation in which Lis has no interest and where there is no fraud or harm directed to Plaintiff. Specifically, the fraud claim is premised entirely on purported misrepresentations by Lancaster to Lis concerning their potential partnership thereby duping Lis into purportedly contributing capital, intellectual property and sweat equity into JAL. Lis Aff., Ex. A, ¶¶ 264-273. As set forth in the Affidavit of Jason Lancaster, Lis' contention that is he the victim of fraud is largely one of his imagination. Lancaster Decl. ¶¶ 16-23. The undisputed record shows that Plaintiff was employed by Gulf Premier for purposes of developing business for the new venture and that Plaintiff and Lancaster had discussed the possibility that, once Lis was out from under his non-compete, Lis would become a formal equity participant in JAL. *Id.* ¶¶ 8-11. But before that day came, Plaintiff's and Lancaster's relationship deteriorated and they decided to part ways effective December 31, 2018. *Id.* ¶ 29. As a result, Lis has no entitlement to any damages for supposed wrongdoing directed to the corporation and there is no serious question as to the merits of the fraud claim.

Quite to the contrary, the only party here to arguably commit a fraud is Plaintiff, who secretly started a business with the same name registered in New York months before the parties decided to end their relationship and during which time he began to build a customer base for his new company by stealing clients from JAL. *Id. ¶¶* 30-33.

**B.      *The Balance of Equities Favors Denying Injunctive Relief.***

Finally, even assuming there was a serious question on the merits, Plaintiff fails to establish that that the "balance of hardships tips decidedly" in his favor. *See* Grillasca v. N.Y. City Hous. Auth., 2010 U.S. Dist. LEXIS 35417, at *15 (S.D.N.Y. 2010) (declining to grant injunction where plaintiff had failed to establish that the "balance of hardships tips decidedly" in her favor). In fact, equity strongly weighs against injunctive relief here.

Courts will ordinarily not grant an injunction where an erroneous grant of an injunction would cripple a defendant's business. For instance, in *Marcy Playground*, producers moved for a preliminary injunction to enjoin the distribution of a music album and recording, alleging, in part, that the balance of hardships tipped decidedly in their favor because of "risk that their nascent reputations . . . might be injured." *Marcy Playground*, 6 F. Supp. 2d at 283. Examining the balance of hardships, the Court determined that "an erroneous denial of an injunction risks [only] a speculative adverse impact on the plaintiff." *Id.* Whereas, "an erroneous issuance of a preliminary injunction would interrupt the marketing of a hit recording that is generating very substantial revenues" for defendants and this "interruption [on defendant's business] would have a significant and negative impact on the revenue stream, [that] there would be no reliable means of estimating." *Id.* Accordingly, the Court held that the balance of hardships did not decidedly tip in plaintiffs' favor because injunction "seems quite likely to result in significant but unmeasurable economic injury to the defendants." *Id.* In fact, even where the balance of hardships is arguably equal, courts

have declined to grant an injunction. *MyWebGrocer LLC v. Hometown Info, Inc.*, 375 F.3d 190, 195 (2d Cir. 2004) (declining request for injunction where both parties were able to show that they would "suffer determinable monetary damages should they not prevail on the injunction issue").

Here, Plaintiff does not advocate that the "balance" of the equities tips decidedly in his favor but merely concludes, without any reasoning, that "[t]here is no basis to conclude that the Defendants will suffer significant hardship from such an injunction." Pl. Mem., p. 16. The assertion is mind-boggling. What Plaintiff effectively demands of this Court is that it ignore any economic harm to Defendants and, instead, shift the playing field dramatically in Plaintiff's favor by granting it ultimate relief. Indeed, such sweeping and draconian injunctions would effectively cripple Defendants businesses – preventing them from acting on behalf of JAL, speaking with any clients or vendors and operating in the market place, all the while allowing Plaintiff to continue to build a competing business under the same name while the objects of the litigation are in his hand. This is not the purpose of a preliminary injunction.

In short, the relief requested is neither necessary nor appropriate to maintain the status quo or protect Plaintiff, but instead imposes an undue substantial harm on Defendants. Accordingly, it is clear that the balance of hardships tips decidedly in favor of Defendants.

## III.    The Public Interest Weighs in Favor of Denial.

Plaintiff asserts the injunctive relief "would actually serve the public interest by ensuring the out of state perpetrators who reside in Texas are responsible for a massive fraud inflicted upon a New York domiciled individual (Mr. Lis) and a corporate citizen of New York (JAL) are not rewarded." Pl. Mem., p. 17. Not surprisingly, Plaintiff does not cite to one case to support this

position.[2]  Certainly the "public interest" is not advanced by bestowing unwarranted relief on a New York Plaintiff at the expense of Texas Defendants.  Once again, Plaintiff asks this Court to decide his allegations are completely true, and thus, he should be allowed to force the Defendants to put their business on hold during the pendency of this litigation, while he pursues his competing venture.  Such relief certainly does not serve any public interest but rather only the private interest of Plaintiff himself.

## IV.    The Mandatory Injunctive Relief Sought Must Likewise Be Denied.

Contrary to Plaintiff's assertions, the Motion does not only seek to maintain the status quo (Pl. Memo, p. 11, 17), but requires that Defendants take affirmative action to provide access to certain books and records; return certain amounts allegedly paid to themselves; account for the conduct of JAL; return certain funds Plaintiff contends he paid on their behalf; reveal communications with third-parties; and pay a sales agent for work Plaintiff claims she is entitled to be compensated for (Pl. Memo, pp. 1-4).  Given that Plaintiff has failed to satisfy the standard for prohibitory injunction, Plaintiff cannot meet the more rigorous standard for a mandatory injunction.

As set forth above, a mandatory injunction is subject to a "more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits."  *Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 624 (S.D.N.Y. 2008) (quoting *Almontaser v. N.Y. City Dep't of Educ.*, 519 F. 3d 505, 508 (2d Cir. 2008)).  A movant seeking a

---

[2] Oddly, Plaintiff cites to the *Barturen v. Wild Edibles, Inc.* - a case that does not analyze or discuss the public interest prong of the preliminary injunction standard but merely held that the balance of equities tipped in favor of plaintiffs because to not grant the injunction "would leave plaintiffs exposed to perceived risk of losing their livelihoods at the hands of an employer that has concededly fired other employees, under ambiguous circumstances, and with full knowledge of the statutes forbidding retaliation." 2007 U.S. Dist. LEXIS 93025, at *15 (S.D.N.Y. Dec. 18, 2007).  Such is not the situation here.

mandatory injunction must also "make a 'strong showing' of irreparable harm in addition to showing that the preliminary injunction is in the public interest." *New York v. Actavis PLC,* 787 F.3d 638, 650 (citation omitted). With respect to the aforementioned claims, wherein Plaintiff asks the Court to direct Defendants to take certain specific steps, Plaintiff was required to show a "clear" or "substantial" likely success in the merits, a "strong" showing of irreparable harm, and to demonstrate that the injunction would be in the public interest. *Id.* Insofar as Lis failed to meet the regular standard on every element *see supra*, he also fails to meet the heightened standard for mandatory injunction. Thus, his motion should be denied.

**V.     An Injunction Against Disparagement is Not Permissible.**

There is no legal basis for this Court to enjoin Defendants from holding themselves out as Plaintiff or disparaging Plaintiff or acting with authority on behalf of JAL.

"A preliminary injunction is a prior restraint, and as such, 'bears a heavy presumption against its constitutional validity. Even where the speech involved is libelous or defamatory, First Amendment concerns regarding prior restraints on speech generally outweigh the possible damage caused to the moving party's reputation." *Camprubi-Soms v. Aranda*, 2001 U.S. Dist. LEXIS 11291, at *18 (S.D.N.Y. 2001) (denying a request to enjoin defendant from "spreading false and damaging comments"); *see also NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 482 (2d Cir. 2004) (finding that, in considering whether to affirm the denial of preliminary injunction, "[i]f criticisms on defendants' websites kill the demand for plaintiffs' service, that is the price that, under the First Amendment, must be paid in the open marketplace for ideas"). And, "absent extraordinary circumstances," equity ordinarily does not weigh in favor of injunction even in defamation suits. *Metro. Opera Assn. v. Local 100, Hotel Emples. & Rest. Emples. Intl. Union*, 239 F.3d 172, 177

(2d Cir. 2001) (noting that there is a "heavy presumption against prior restraints" in the First Amendment and that injunctions are traditionally not issued even in defamation cases).

No such extraordinary circumstances exist here. Plaintiff asserts no underlying claim for disparagement, libel or any related cause of action. *See ZeptoLab UK Ltd. v Commonwealth Toy & Novelty Co.*, 2012 U.S. Dist. LEXIS 122995, at *23 (S.D.N.Y. 2012) (stating that the focus of analyzing the requisite elements of preliminary injunction "is on the claims and factual allegations in the complaint"). The supposed basis for the injunction – to prevent his reputation from being harmed while the litigation proceeds – is not a basis for injunctive relief, which is only permissible to maintain the status quo while a litigation is pending. *See Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976) ("[T]he normal function of the preliminary injunction is to maintain the status quo pending a full hearing on the merits."). In the absence of any affirmative claim supporting this relief, an injunction cannot be granted.

## VI. Plaintiff is Not Entitled to an Asset Freezing Injunction – An Extreme Remedy

Plaintiff's requested relief includes an injunction freezing the bank accounts of JAL. Pl. Mem., p. 1. Plaintiff does not articulate any basis for such an extreme remedy that essentially would handcuff JAL from engaging in any business operations and earning any money during the pendency of this litigation. Presumably, this is because Plaintiff knows there is no basis in law for such an outrageous request. Plaintiff's request for a freezing injunction fails as a matter of law.

It is well established that when there is "no lien or equitable interest" claim, a court lacks authority to issue a prejudgment asset freeze injunction. *Grupo Mexicano de Sarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 325 (1999). In this circuit, courts generally consider three factors for asset freeze injunctions: (1) whether the movant has asserted a cognizable equitable claim, namely "the basis for [the plaintiff's] claim and the nature of the underlying remedy

sought"; (2) whether there is a nexus "between the injunctive relief and the ultimate relief sought"; and (3) whether the interim relief would be a "reasonable measure to preserve the status quo in aid of the ultimate relief sought." *Shamrock Power Sales, LLC v. Scherer*, 2016 U.S. Dist. LEXIS 144773, at *9, 12, 19 (S.D.N.Y. 2016) (internal citations and punctuation omitted).

It is equally well established that federal courts have no authority to issue "preliminary injunction[s] preventing petitioners from disposing of their assets pending adjudication of respondents' [] claim[s] for money damages." *Grupo*, 527 U.S. at 333 (1999). It is clear law in this circuit that "a federal court does not have the power, in the exercise of its general equitable jurisdiction, to issue a preliminary injunction in an action for money damages to prevent a defendant from transferring assets in which the plaintiff claims no lien or equitable interest." *OSRecovery, Inc. v. One Groupe Intl.*, 305 F. Supp. 2d 340, 347 (S.D.N.Y. 2004).

Here, there is no lien claimed. *See generally* Pl. Mem. Nor does Plaintiff have any equitable interest in any funds properly or improperly withdrawn from JAL as once again Plaintiff was never an owner of JAL and was employed by Defendant Gulf Premier whereby he was compensated handsomely. Lancaster Decl., ¶ 2, 7, 8. Rather, Plaintiff once again takes the bewildering position that the Court should simply accept his most egregious allegations at face value, prejudge Defendants as guilty of fraud, and thereby prevent Defendants from continuing JAL's business. If, in fact, Lis were to establish he is the victim of fraud, his relief and remedy would be an award of monetary damages. Accordingly, there is no basis for such an extreme restraint on JAL's future business or its legal retainer and this request must also be denied.

## VII.    Plaintiff is Not Entitled to Restrain / Retrieve the Retainer Funds.

Plaintiff also bizarrely seeks "a preliminary injunction freezing and ordering to be escrowed all retainer sums received and to be received by White and Williams LLP, attorneys' for

Defendants" on the grounds that Plaintiff believes Lancaster used funds he allegedly embezzled from JAL to pay Defendants' counsel. Pl. Mem., p. 19. Plaintiff does not cite to any evidence to support this bold and salacious allegation other than his own "belief." Pl. Mem. pp. 13-14, 19-20; Lis Aff., ¶ 56.

While "in certain circumstances[] lawyers do have a duty to inquire as to circumstances surrounding the payment of fees," these circumstances arise in limited situations when "transferees [] were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such an inquiry." *Gala Enters. v. Hewlett Packard Co.*, 989 F. Supp. 525, 531-532 (S.D.N.Y. 1998). However, there is no blanket rule "which requires attorneys to question the financial resources of their clients in paying their fees" or requirement "that attorneys defending civil claims evaluate the financial status of their clients before accepting payment of their fees." *Id*. at 531. Because "[t]o place such a burden on attorneys would add intolerably to their problems." *Id*.

Plaintiff cites only to *S.E.C. v. Princeton Economic International, Ltd.* in support of its position to restrain payment of legal fees. 84 F. Supp. 2d 443 (S.D.N.Y. 2000). However, this reliance is misguided because the facts and circumstances herein are entirely distinguishable. In contrast to the facts involved here, *Princeton Economic* was a "highly publicized securities fraud case" and where it was determined that the "attorneys either knew, or should have known that the monies received from alleged corporate mal-actors" were used to pay the legal fees. *Id*. at 446-447. In particular, the law firm there "admitted in both its papers and oral argument" that it had "concerns about the source of the funds" and attempted to conceal the funds from the government. *Id*. at 447.

None of these facts or circumstances are even remotely involved here. Pl. Mem., pp. 13-14, 19-20; Lis Aff., ¶ 56. There is no basis whatsoever, and Plaintiff does not even attempt to allege any, for asserting that Defendants have paid their law firm with any sort of ill-gotten proceeds. *Id*. It seems that Plaintiff is not only attempting to disrupt JAL's ongoing business with this injunction request but also to prevent JAL and its co-Defendants from mounting a defense with competent counsel. In the absence of such allegation, let alone proof, there is no basis for this request and it must be rejected.

## VIII. Court Should Not Enter Preliminary Injunction in the Absence of A Showing that Personal Jurisdiction Exists.

It is well established that "[b]efore a court can enter a preliminary injunction against a litigant, personal jurisdiction over that party must be 'clearly established.'" *Do the Hustle, LLC v. Rogovich*, 2003 U.S. Dist. LEXIS 10445, at *7 (S.D.N.Y. 2003) (citing *Weitzman v. Stein*, 897 F.2d 653, 658-659 (2d Cir. 1990)). Defendants intend to bring a motion for lack of personal jurisdiction or transfer given that the Defendants neither reside in nor conduct any business in New York and none of the alleged wrongdoings occurred in this state. Plaintiff has not established, and will not be able to establish, personal jurisdiction over the Defendants necessary for this Court to order a preliminary injunction against them. Accordingly, insofar as it is determined that this Court lacks personal jurisdiction over the Defendants, Plaintiff's request for preliminary injunction should likewise be denied.

### TO THE EXTENT THIS COURT IS INCLINED TO GRANT INJUNCTIVE RELIEF, A BOND MUST BE REQUIRED.

As Plaintiff concedes, under Rule 65 of the Federal Rules of Civil Procedure, a bond is mandatory for any application for injunctive relief. Fed. R. Civ. P. 65 ("[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant . . . ."). Courts in this Circuit have, only on very limited occasions, dispensed with that requirement where there

exists no likelihood of harm to the party enjoined; where the injunctive order is issued to aid and preserve jurisdiction (*Doctor's Assoc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)); or where the party seeking injunction is a public interest entity or indigent plaintiff (*Pharm. Socy. v. N.Y. State Dept. of Social Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)). None of these circumstances is present here.

Once again, the relief Plaintiff is seeking for so-called "public interest" (Pl. Mem., p. 18) is draconian, and, if granted, would necessarily have dramatic ramifications for Defendants. Plaintiff cannot on the one hand demand that the Court accept his allegations at face value and provide him this relief, while on the other hand insist that, should the litigation not end up the way Plaintiff had hoped, all risks of injury associated therewith be borne entirely by Defendants. Defendants certainly should receive protection in the highly likely event that Plaintiff is ultimately unsuccessful here. If any injunction is granted, a substantial bond should be required.

## THIS COURT SHOULD ISSUE SANCTIONS AGAINST PLAINTIFF UNDER RULE 11 OF THE FRCP.

Rule 11 of the Federal Rules of Civil Procedure provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, - (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous extension, modification, or reversal of existing law or the establishment of new law…

Fed. R. Civ. P. 11(b). Rule 11 imposes a requirement on attorneys to ensure that an argument is not frivolous. *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995). A position is frivolous "if, under an objective standard of reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Id.*, 66 F.3d at 25. "Sanctions are to be imposed when a competent attorney could not form the requisite reasonable

belief as to the validity of what is asserted in the paper." *Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*, 118 F.R.D. 45, 48 (S.D.N.Y. 1987).

As set forth above, Plaintiff has sought sweeping substantial relief despite the fact that Plaintiff lacks standing to assert any of his claims, let alone seek injunctive relief. Further, much of the injunctive relief sought is clearly precluded by well-established law and the remainder of which is in no way available under existing facts. Plaintiff's demand required Defendants to commit substantial resources to contesting a frivolous request for relief. Plaintiff and his attorney both knew that at all relevant times Plaintiff did not have an ownership in JAL, and thus, any claims seeking to redress wrongs committed against JAL were improper. This behavior should not be countenanced and the Court should, pursuant to Rule 11, impose appropriate sanctions on Plaintiff for engaging in such frivolous behavior.

Accordingly, the Court should sanction Plaintiff for this conduct and should award Defendants the costs associated with responding to this Motion.

## CONCLUSION

For the reasons stated herein, the Motion for Preliminary Judgment should be denied in its entirety and plaintiff should be sanctioned for frivolous conduct.

Dated: New York, New York
      March 25, 2019

By: _____
      Thomas E. Butler, Esq.
      Nicole A. Sullivan, Esq.
      Shruti Panchavati, Esq.
      White and Williams LLP
      7 Times Square, Suite 2900
      New York, New York 10036
      (212) 714-3070
      Butlert@whiteandwilliams.com
      *Attorneys for Defendants*