**Exhibit G**

# MEMORANDUM OF UNDERSTANDING
# ADDENDUM TO OPERATING AGREEMENT

Date: September 28, 2018

The following parties hereby enter into the following memorandum of understanding and agreement:

Andrew Lis
61 W. 10th Street, 2A
New York, NY 10011
(hereinafter "LIS")

Jason Lancaster
26400 Kuykendahl Rd., Ste. C180 #241
The Woodlands TX 77389
(hereinafter "LANCASTER")
(Collectively, "Parties" or "Members")

1.1. **AGREEMENT AND RELEASE** regarding the disposition of the existing business and future dealings between and through the above referenced Parties;

1.2. **REGISTERED OFFICE & NAME:**
The Limited Liability Company is named and located as follows:
JAL Environmental Services, LLC
EIN 81-1514745
(A Texas LLC)
26400 Kuykendahl Rd., Ste. C180 #241
The Woodlands TX 77389
(hereinafter "JAL")

1.3. **FORMATION:** JAL was formed by Jason LANCASTER (hereinafter, "LANCASTER") in February, 2016 pursuant to the Limited Liability Company Law (the "Act") when its Articles of Organization ("Articles") were filed with the office of the Secretary of State for Texas.

1.4. **OWNERSHIP:** JAL has operated as a co-venture between LANCASTER and LIS.
   a. **WHEREAS,** LIS and LANCASTER have done business under the name JAL whereby they shared equally in the profits, losses and management of JAL;
   b. **WHEREAS,** LIS would provide commercial expertise and LANCASTER provided logistics expertise;

1.5. **OPERATING AGREEMENT:** Since date of formation, until this date, no formal agreement has governed the Parties' relationship.
  a. **WHEREAS**, no prior formal operating agreement existed governing the parties, this memorandum seeks to formalize the relationship, obligations and liabilities of the Parties.
  b. **WHEREAS**, LIS and LANCASTER agree all shares of JAL are equally distributed, effective upon signing. *6/49 Payor?*
  c. **WHEREAS**, Management of JAL will continue on 50/50 basis, shared equally by LIS and LANCASTER, with both parties enjoying shared Management Powers with no restriction other than under law.

1.6. **MANAGEMENT:**
  a. The Company shall be managed by LIS and LANCASTER, who may unilaterally act in good faith on behalf of the Company's best interests with or without a meeting and regardless of any financial interest the Members may have in such action.
  b. Except as otherwise provided by law, the Articles or this Agreement, a member shall have no personal liability, merely as a member, for any liabilities or losses of the Company beyond the member's contributions.
  c. The Company shall indemnify the Members for all costs, losses, liabilities, and damages paid or accrued by such Member in connection with the business of the Company, and may advance expenses incurred by the Member in connection with the business of the Company, or in any legal action arising from action taken by the Member in connection with the business of the Company, all to the fullest extent provided or allowed by the law.
  d. The Members may, at their sole discretion, also indemnify any or all employees or agents of the Company for all costs, losses, liabilities and damages paid or accrued by the agent or employee in connection with the business of the Company to the fullest extent provided or allowed by the law.
  e. Any Member shall be reimbursed for all reasonable expenses incurred on behalf of the Company and shall be entitled to reasonable compensation for time spent managing the Company, in an amount to be determined from time to time as agreed by mutual written consent of LIS and LANCASTER.
  f. The Member may have and engage in business and investment interests and activities other than the Company, and need not account to the Company for profits or remuneration gained thereby. The Member may enter into transactions considered to be competitive with or similar to those of the Company, or a business opportunity beneficial to the Company, and the Company waives any right or claim to participate therein. *Full Disclosure of Business Involvement*
  g. In discharging the Member's duties to the Company, the Member shall refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of any law or regulation.

h. Without limiting the generality of any statement of the Members' powers and authority set forth elsewhere in this Agreement, the Members upon mutual agreement, on behalf of the Company, may: *WRITTEN*
   i. Supervise and manage the business of the Company;
   ii. Execute, in the name of the Company, any contracts, notes, mortgages, leases, bonds, or other documents that may be need in connection with the operation of the Company's business;
   iii. Borrow money on the Company's credit for use in the Company's business;
   iv. Purchase personal property for use by the Company;
   v. Make and undertake all necessary and reasonable expenditures to acquire and improve the Company's assets;
   vi. Transfer, sell, or dispose of all or substantially all of the Company's assets or funds;
   vii. Admit new members to the Company from their own shares; and
   viii. Engage the Company in any business permitted under the terms of this Agreement.

1.7. **ASSETS:** LIS and LANCASTER agree JAL is the sole entity involved in their partnership.
   a. **WHEREAS,** JAL is currently a self-sustaining, non asset-based trading company with only cash reserves earned by the co-venture;
   b. **WHEREAS,** the company assets consist only of co-ownership of all marks and co-ownership of a CHASE BUSINESS ACCOUNT (#807618009) and a BANK OF AMERICA BUSINESS ACCOUNT (#586036801674);
   c. **WHEREAS**, LIS and LANCASTER seek to continue their agreement as co-ventures;
   d. **WHEREAS**, LIS and LANCASTER may choose to purchase assets jointly as JAL for company use, these items are to be shared equally by the parties.
   e. **WHEREAS,** LIS, LANCASTER and JAL utilized the entities of Gulf Premier Logistics LLC and Overland Distribution and Overland Express as logistical, administrative and support assets while JAL has represented these entities as part of a group or family of related companies;
   f. **WHEREAS,** LIS and LANCASTER agree any assets, corporate marks or intellectual property or trade materials provided by these third parties in the group or family of companies may be shared by JAL, but this indicates no shared ownership of marks or entities or trade materials of these third parties;
   g. **WHEREAS,** Parties retain independent ownership of entities outside of JAL developed by LIS or LANCASTER independent of JAL, with no hindrance, restriction or claim;
   h. **WHEREAS,** all parties now seek to agree that each party may continue doing business as that party or any other party separately, without hindrance, restriction or claim;

3

28-Sept

1.8. **DISTRIBUTIONS**
   a. JAL may make distributions at such times and in such amounts as mutually agreed by LIS and LANCASTER.
   b. No distribution shall be declared and paid unless all Parties agree.
   c. Any distributions are to be recorded on a K-statement or similar at the close of the Fiscal Year.
   d. Parties hereby agree that they shall adjust all payments as to each shareholder receiving an equal distribution of profits after all business related expenses.
   e. The parties may agree to divide future income, profits and losses unevenly should they continue doing business together. Any such change shall be reflected in a shareholders' agreement or bylaw, an amendment to such, or on a deal by deal basis in a memorandum of understanding.

1.9. **ACCOUNTING:** LIS and LANCASTER agree to account for all profits, losses, payments, expenses, benefits, deductions, taxes, filings and income for JAL, separate from all other entities.
   a. Both parties agree to account for all profits, and losses of JAL, and for all expenses and payments made by JAL, and any shareholder withdrawals / payment / salary / benefits paid by JAL to the parties and others.
   b. The parties shall engage in informal accounting, to be concluded within 30 days from the date of the full of execution of this Agreement.
      i. All parties shall exchange bank statements and all other records evidencing profits, revenue, expenses, payments (including canceled checks, wire transfers, etc) on every transaction from the date of formation (February 4, 2016) to the date of the instant Agreement (and the parties shall continue exchanging financial information thereafter on new transactions).
      ii. The parties understand that LIS may not be in possession of all pertinent documentation, in which event LANCASTER shall provide it to LIS. All documents shall be exchanged within 7 days of this Agreement.
   c. Should the accounting process reveal any irregularities, the Parties shall make a payment for the full amount due within 14 days of the conclusion of the accounting or the issuance of a report notwithstanding whether the funds have been previously paid by JAL to that party or the tax treatment of any funds.
   d. Any ongoing deficiencies in the Accounting process to be addressed at this time with long-term solution.
   e. The parties may agree to a different schedule of payments between them, so long as the party entitled to payment receives the full amount due within three months of the conclusion of the accounting and/or demand for payment.

1.10. **TAXES and JURISDICTIONS**
   a. **ELECTIONS:**
      The Members may make any tax elections for the Company allowed under the Internal Revenue Code of 1986 as amended from time to time ("Code") or the tax laws of any state or other jurisdiction having taxing jurisdiction over the Company. It is the intent of the Members and the Company that the Company is to be an entity separate from the Members for purposes of the Code.

b. **JURISDICTIONS:**
To the extent that the laws of any taxing jurisdiction require, the Members will prepare and the Members will execute and submit an agreement indicating that the Members will make timely income tax payments to the taxing jurisdiction and that the Members accept personal jurisdiction of the taxing jurisdiction with regard to the collection of income taxes attributable to the Member's income, and interest, and penalties assessed on such income, if such agreement is required by the taxing jurisdiction.

If the Members fail to provide such agreement, the Company may withhold and pay over to such taxing jurisdiction the amount of tax, penalty and interest determined under the laws of the taxing jurisdiction with respect to such income. Any such payments with respect to the income of the Member shall be treated as a distribution for purposes of Article 5.

c. **LIABILITY:**
LANCASTER confirms to LIS no Tax Liability exists, and all filings are current. Any tax liability from years 2016, 2017 are sole responsibility of LANCASTER, whereas any tax liability from 2018-onward to date of Dissolution is shared responsibility of all Members.

1.11 **CONFIDENTIALITY AND TRADE SECRETS**
a. No Party shall, at any time or under any circumstances, without the consent of all Members, directly or indirectly communicate or disclose to any Person (other than the other Parties and their employees, agents, advisors and representatives) or make use of any confidential knowledge or information acquired in the course of conducting JAL business by such Party relating to or concerning the customers, products, technology, trade secrets, systems or operations, pricing and bid information, or other confidential information regarding the property, business and affairs of JAL (collectively, "Information"), regardless of whether material was previously marked or stamped as, "Confidential" (or similar).
b. No party shall contact existing or prospective clients or accounts and reveal any information, including confidential information and trade secrets, bidding and pricing strategies, systems or methods, or such.
c. Unlawful conduct of a party may be restrained by seeking an appropriate order.
d. Each violation for which there a judicial finding under this paragraph shall entitle the aggrieved party to liquidated damages in the sum of no less or more than $250,000. The parties agree that this sum is not a penalty but a reasonable compromise on the issue of damages that may be hard to ascertain.

5

28-Sept

*Handwritten margin notes (left side):*
- *Non-Compete*
- *★ No Business for 5 years if Dissolved*
- *Payment for Computers, equipment to cover payments*

1.12 **DISSOLUTION**
   a. The Company shall be dissolved and closed in the State of Texas upon request of LIS or LANCASTER.
   b. Electronic Notice is allowed.
   c. The Company shall also be dissolved and its affairs wound up at such time as the Company has no Members.
   d. Terms of this Agreement will survive any termination and will govern behavior for a minimum period of five years from date of dissolution.
   e. The Parties agree that regardless of continued operation, they will cooperate to account for all profits and losses, and expenses.
   f. Distribution of Assets on Dissolution
   Upon the winding up of the Company, the company's assets shall be distributed as follows:
      i. to creditors, including the Member if he is a creditor, to the extent permitted by law, in satisfaction of Company liabilities; and
      ii. to the Members; Such distributions shall be in cash, property other than cash, or partly in both, as determined by the Members.
      iii. If applicable upon dissolution, retention of naming rights to JAL by either party will result in payment due from LIS or LANCASTER to the other Party in the amount of $500 for name, marks or logos.
   g. Winding Up and Articles of Dissolution
      i. The winding up of a limited liability company shall be completed when all debts, liabilities, and obligations of the limited liability company have been paid and discharged or reasonably adequate provision therefor has been made, and all of the remaining property and assets of the limited liability company have been distributed to the Member.
      ii. Upon the completion of winding up of the Company, the Member or other person designated by the Member shall deliver articles of dissolution to the Secretary of State for filing. The articles of dissolution shall set forth the information required by the Act.

1.13. **MISCELLANEOUS PROVISIONS**
   a. This Agreement contains the entire understanding of the parties. There are no representations, warranties, covenants or undertakings other than those as expressly set forth herein.
   b. A modification or waiver of any of the provisions of this Agreement shall be effective when and only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.
   c. In the event any provision contained in this Agreement, either in whole or in part, is deemed or held to be invalid or unenforceable by any court of competent jurisdiction, the remainder of any partially declared invalid or unenforceable provision and all other provisions of the Agreement shall, nonetheless, remain and continue in full force and effect, provided that the remaining terms reflect the intent of the parties.

d. Effective Date of Agreement. The effective date of this Agreement shall be the date on which it is fully executed by both parties.
   e. Commencement Date of Agreement. The terms of this Agreement will be considered binding from January 1, 2018

   *[handwritten: 2016 BINDING FROM]*

1.14. **SIGNATURES**

In Witness Thereof, the undersigned agree to the above terms and conditions.

ACCEPTED AND AGREED TO:

JAL ENVIRONMENTAL SERVICES LLC
A Texas Limited Liability Company

By: _____
   Jason LANCASTER, Authorized Person

ACCEPTED AND AGREED TO:
ANDREW LIS

By: _____
   Andrew LIS

ACCEPTED AND AGREED TO:
JASON LANCASTER

By: _____
   Jason LANCASTER


STATE OF _____, COUNTY OF _____ ss.:

On____, day of _____, 2018 before me personally came Jason LANCASTER to me known, and known to me to be the individual described in, and who executed the foregoing document, and duly acknowledged to me that he executed the same.


_____
   Notary Public

7
28-Sept

## CERTIFICATE OF CONFORMITY

I, _____, a duly licensed to notary public duly licensed in the State of _____, affirm under penalty of perjury and certify that I witnessed the signature of _____ as applied to the Agreement annexed to this certificate, which was signed and dated on _____, 2018. The manner in which same was signed was, and is, in accordance with, and conforms to, the Laws for taking oaths and acknowledgments, in the State of _____.

Dated:

_____
NOTARY PUBLIC
NAME:


STATE OF _____, COUNTY OF _____ ss.:

On____, day of _____, 2018 before me personally came Andrew LIS to me known, and known to me to be the individual described in, and who executed the foregoing document, and duly acknowledged to me that he executed the same.


_____
Notary Public


## CERTIFICATE OF CONFORMITY

I, _____, a duly licensed to notary public duly licensed in the State of _____, affirm under penalty of perjury and certify that I witnessed the signature of _____ as applied to the Agreement annexed to this certificate, which was signed and dated on _____, 2018. The manner in which same was signed was, and is, in accordance with, and conforms to, the Laws for taking oaths and acknowledgments, in the State of _____.

Dated:

_____
NOTARY PUBLIC
NAME: