**Exhibit H**

# AGREEMENT and RELEASE

Upon this date of _____, 2018, it is the desire and demand of the Parties listed below to enter into this agreement and release as follows:

| | |
|---|---|
| Jason Lancaster | Andrew Lis |
| 26400 Kuykendahl Rd., Ste. C180 #241 | 61 W. 10th Street, 2A |
| The Woodlands TX 77389 | New York, NY 10011 |
| (hereinafter "Lancaster") | (hereinafter "Lis") |

Collectively, Lis and Lancaster represent the Board of Directors of JAL ENVIRONMENTAL SERVICES LLC, a Texas Limited Liability Company, (hereinafter "JAL" or "the entity"), located at 26400 Kuykendahl Rd., Ste. C180 #241, The Woodlands TX 77389 under EIN# 81-1514745. With Unanimous Written Consent, the Board Directors (hereinafter "The Parties") issue the following binding resolutions and agree:

1) The Parties, Jason Lancaster (hereinafter, "Lancaster") and Andrew Lis (hereinafter, "Lis"), each with 50% of shares in JAL, hereby direct that Jason Lancaster immediately dissolve the entity with the Texas Department of State on consent of all members.

2) JAL was formed by mutual consent of the Parties in February, 2016 pursuant to the Limited Liability Company Law (the "Act") when its Articles of Organization ("Articles") were filed with the office of the Secretary of State for Texas. The entity will cease all operations, including co-venture operations, effective immediately as is the mutual wish and demand of the Parties.

3) Both parties agree to promptly account for all profits, and losses of JAL, and for all expenses and payments made by JAL, and for any shareholder withdrawals / payments / salary / benefits paid by JAL to the parties and others.

4) All parties shall exchange bank statements and all other records evidencing profits, revenue, expenses, payments (including canceled checks, wire transfers, etc) on every transaction from the date of formation (February 4, 2016) to the date of this Release and Agreement (and the parties shall continue exchanging financial information thereafter on ongoing transactions). Each party agrees to sign and provide the other with appropriate authorizations to obtain records in addition to any duty imposed by this agreement.
   a. The parties understand that Lis may not be in possession of all pertinent documentation, in which event Lancaster shall provide it to Lis. All documents shall be exchanged within 7 days of this Agreement.
   b. Should any party believe that there is a dispute concerning documentation or the accounting of the business, the parties will promptly retain the services of an independent forensic accountant to be agreed to by the parties, consent not to be unreasonably withheld.
      i. Parties shall decide upon an accountant in good faith and shall split all costs for his or her services.
      ii. Should they be unable to pick an accountant, then each party shall provide three potential accountant names within 3 days of the initial demand of any party, and shall randomly pick one out of the six provided, by blind drawing, witnessed by the Parties.
      iii. The accountant shall review all accounting records of JAL and calculate profits and losses after subtracting all necessary and agreed to business related expenses (in the event that there is a dispute about what expenses are necessary, the forensic accountant will decide the issue after giving the parties an opportunity to be heard), and will allocate any profits or losses to be paid or incurred by the parties as to reflect a 50-50 split of profits and losses of JAL from the date of formation until present.
      iv. The parties will rely upon the accountant's findings, which must comply with generally accepted accounting principles, unless such findings yield discrepancies with a reasonable degree of certainty, after which, the party asserting such, shall bring a civil action within 20 days of receiving such findings.
         a) The accountant's findings shall be reported in a report to be sent to the parties via simultaneous email.
         b) The 20 day period shall run from the account's email to the parties.
         c) Should the aggrieved party fail to proceed with litigation, that party shall waive all claims that the accounting was improper and accept that findings are reasonable and correct.

d) Should the accounting reveal that the Entity and/or a party to this Agreement owes any funds to the other, then the owing party shall make a payment for the full amount due within 14 days of the conclusion of the accounting or the issuance of a report notwithstanding whether the funds have been previously paid by JAL to that party or the tax treatment of any funds. Any JAL account balance shall be distributed to the parties based on the accounting report.

e) The parties may agree to a different schedule of payments between them, so long as the party entitled to payment receives the full amount due within three months of the conclusion of the accounting and/or demand for payment.

5) Effective immediately, all commercial matters will be entered into an informal receivership and care under Andrew Lis, who will manage to satisfaction all contractual obligations, all accounts receivable and accounts payable, using existing and pending company funds and billings. Lis shall be the day to day manager and payor and recipient of all JAL funds and will run the company as managing member. Lancaster shall retain a passive role as member.
   a. It is expected by the Parties that this period of the informal receivership will not extend beyond the end of calendar year 2018.
   b. In the event accounts remain open beyond December 31, 2018, the Parties agree to cooperate in good faith to resolve any residual tax liability for 2019.
   c. Lis will work in good faith to inform all vendors, contractors and customers that JAL has dissolved and is no longer in business.

6) All company bank, credit, money market, investment, expense or other accounts owned all or in part by the Entity will be closed immediately, and funds will be consolidated into a holding account administered by Lis with transparency to Lancaster. Funds will be used during this time only for meeting contractual obligations and vendor payments required for satisfactory dissolution of the Entity.
   a. During this period, all payments and expenses deemed, "non essential" to the conclusion of the business operations will immediately cease.
   b. It is agreed that essential expenses include phone for Lis and Lancaster; internet / email / telecommunications access; any required bank fees or similar; Quickbooks fees or similar.
   c. Effective immediately, all payroll will cease and benefits will terminate.
   d. Accounts to be closed immediately include but are not limited to:
      i. JP MORGAN / CHASE BANK, 807618009 (CHECKING/SAVINGS/MMA/CREDIT/OTHER)
      ii. BANK OF AMERICA, 586036801674 (CHECKING/SAVINGS/MMA/CREDIT/OTHER)
      iii. CHASE CREDIT CARDS ending in x1125 (Jason), x6828 (Andrew)
   e. During this period, Parties may agree to a stipend for administering the Accounts during the wind-down period. Stipend will be result in payment of _____, withdrawn monthly and accounted for as a contractor expense (1099 or K-1 or similar).
      i. It is not the intent of the Parties to extend the process to extend this stipend period.
      ii. Parties agree to cooperate in good faith to conclude wind-down as soon as possible.

7) A full statement of account to be shared on ongoing basis, so all parties are aware of obligations owned by the Entity and so all concerned remain aware of schedule for completion of this process.

8) At the conclusion of the wind-down period:
   a. In the event there is a shortfall of any sort, Parties agree to cooperate fully to determine a payment plan to satisfaction of the Parties, their vendors and contractors.
   b. In the event there is a surplus of any sort after all business expenses, Parties agree to split any remaining funds equally after accounting for considerations in Part 9.
   c. Parties will, as acceptance that all matters have been concluded, including but not limited to obligations, debts, accounting, commercial matters and so on, agree to mutually sign a final release from further liability.

9) The Parties draw attention to the following points regarding assets and liabilities:
   a. Balance of $300,000 loan owed to Debbie and Mark Lancaster (hereinafter, "Mr. & Mrs. Lancaster") from initial efforts to finance JAL in 2016.
      i. All interest payments to-date have been satisfied.
      ii. Statement to be provided confirming net total due to Mr. and Mrs. Lancaster as of this signing.

    iii. Upon receipt, Lis to prepare Promissory Notes for Lis (50%) and Lancaster (50%) to be issued on prompt basis confirming repayment due to Mr. and Mrs. Lancaster.

    iv. The Parties agree that should the Entity be unable to fully refund the full amount due to Mr. and Mrs. Lancaster upon conclusion of wind-down period after all commercial matters have been resolved, the balance remaining to be shared equally in two promissory notes from Lis and Lancaster with payment schedule set upon issuance of said Notes.

    v. Any tax liability from repayment will be the responsibility of the Entity and will be made a part of the final profit/loss accounting by the Parties.

  b. Rent for NY Office located at 95 Orchard Street, #2, NY NY 10002. The Parties entered into sublet agreement with agreement in place for a period of 15 months commencing on 01 April 2018 and ending on June 30 2019, with rent due the 1st of every month in the amount of $6,445.00. Lis to pursue early termination; in the interim, rent remains for the Account of the Entity.

  c. Additional Funds identified by Lancaster as unilateral bonuses taken by him, as per his email of 15-October, 2018, to be deducted from compensation / share distribution[1]:

    i. Car payment: $705.00 / month, estimated as $15,522.10 subject to correction after full accounting

    ii. Bonus: May 2nd $21,500.00

    iii. Bonus: Through Gulf Premier Logistics, an entity wholly owned by Lancaster, funds owed to ESP total an estimated $252,450.35 as of 11-October, subject to correction after full accounting

    iv. Bonus: Paid off truck purchased 2018 $42,036.18, subject to correction after full accounting

    v. Bonus: Sept. 12th $40,000.00

    vi. Bonus: New Car Lease $1,846.15 per month

---

[1] *Parties agree the totals of these amounts are in dispute. In one case (item iii), the net amount owed to the Entity is tied to ongoing business being conducted by the Entity that has not yet resolved. Therefore, Parties will separately review all accounts and statements and mutually exchange final accounting before 01-December-2018. Parties will have two weeks to review these findings and will resolve final amounts in the period between 15-31 December 2018. In the event the Parties cannot agree in good faith to a final accrual for Lancaster, Parties agree to exchange names for non-binding mediation prior to commencement of any civil action. This review period to occur on prompt basis and must be concluded not later than March 15, 2019.*

10) The Parties agree they may continue doing business on project basis as separate entities, or may co-venture in the future.
  a. The Parties shall not be restricted from doing business with or as third parties, individually, or through other business ventures and entities under any corporate or trade name.
  b. The parties may agree to divide future income, profits and losses unevenly should they continue doing business together. Any such change shall be reflected in a shareholders' agreement or bylaw, an amendment to such, or on a deal by deal basis in a memorandum of understanding.
  c. Neither party shall have a claim against the other as each party hereby consents to the other conducting business through an entity other than the current Texas JAL.
  d. The parties shall not make a claim for breach of loyalties, breach of contract, or a breach of duties between partners, LLC members, shareholders, or other business torts, except for as stated in this agreement.
  e. Neither party shall make a copyright, trademark or a competition related claim. This release shall be effective immediately.

11) No Party shall, at any time or under any circumstances, without the written consent of the other, directly or indirectly communicate or disclose to any Entity or Person (other than the other Parties and their employees or representatives) or make use of any confidential knowledge or information howsoever acquired by such Party relating to or concerning the customers, products, technology, trade secrets, systems or operations, pricing and bid information, or other confidential information regarding the property, business and affairs of JAL (collectively, "Information").

12) No party shall contact existing or prospective clients or accounts for the purpose to, and will not reveal any information, including confidential information and trade secrets, bidding and pricing strategies, systems or

methods, or such. Unlawful conduct of a party may be restrained by seeking an appropriate order. Each violation for which there a judicial finding under this paragraph shall entitle the aggrieved party to liquidated damages in the sum of no less than $250,000. The parties agree that this sum is not a penalty but a reasonable compromise on the issue of damages that may be hard to ascertain.

13) This Agreement contains the entire understanding of the parties. There are no representations, warranties, covenants or undertakings other than those as expressly set forth herein.

14) A modification or waiver of any of the provisions of this Agreement shall be effective when and only if made in writing and executed with the same formality as this Agreement. The failure of either party to insist upon strict performance of any provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

15) The place(s) of execution of this Agreement shall have no bearing on the law governing its interpretation, it being understood and agreed by both parties that the Agreement shall be construed and governed in accordance with the laws of the State of New York and the State of Texas, exclusive of conflict of laws or principles. The prevailing party shall be entitled to all reasonable legal fees and costs of the proceeding. Any litigation may be filed in New York or Texas.

16) In the event any provision contained in this Agreement, either in whole or in part, is deemed or held to be invalid or unenforceable by any court of competent jurisdiction, the remainder of any partially declared invalid or unenforceable provision and all other provisions of the Agreement shall, nonetheless, remain and continue in full force and effect, provided that the remaining terms reflect the intent of the parties. The parties intend this agreement to govern the wind down of JAL and shall abide by the terms herein in good faith.

17) Effective Date of Agreement. The effective date of this Agreement shall be the date on which it is fully executed by both parties.

18) SIGNATURES:

In Witness Thereof, the undersigned agree to the above terms and conditions.

    ACCEPTED AND AGREED TO:

    FOR
    JAL ENVIRONMENTAL SERVICES LLC
    A Texas Limited Liability Company (EIN 81-1514745)

    By: _____    _____
          Jason Lancaster, Member    Date


    By: _____    _____
          Andrew Lis, Managing Member    Date


    WITNESSED BY:

        STATE OF _____, COUNTY OF _____ ss.:

        On\_\_\_\_\_, day of _____, 2018 before me personally came Jason Lancaster to me known, and known to me to be the individual described in, and who executed the foregoing document, and duly acknowledged to me that he executed the same.

        _____
        Notary Public

**CERTIFICATE OF CONFORMITY**

I, _____, a duly licensed to notary public duly licensed in the State

of _____, affirm under penalty of perjury and certify that I witnessed the signature of

_____ as applied to the Agreement annexed to this certificate, which was signed and dated on

_____, 2018. The manner in which same was signed was, and is, in accordance with, and conforms

to, the Laws for taking oaths and acknowledgments, in the State of _____.

Dated:

                                                                                            _____

NOTARY PUBLIC
NAME:


STATE OF _____, COUNTY OF _____   ss.:


On_____, day of _____, 2018 before me personally came Andrew Lis to me known, and known to me to be the individual described in, and who executed the foregoing document, and duly acknowledged to me that he executed the same.


       _____
             Notary Public

# CERTIFICATE OF CONFORMITY

I, _____, a duly licensed to notary public duly licensed in the State of _____, affirm under penalty of perjury and certify that I witnessed the signature of _____ as applied to the Agreement annexed to this certificate, which was signed and dated on _____, 2018. The manner in which same was signed was, and is, in accordance with, and conforms to, the Laws for taking oaths and acknowledgments, in the State of _____.


Dated:

                                                                                                          _____

NOTARY PUBLIC

NAME: